**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re: UMAPM Holding Company, LLC — Bky File No. 24-43262
Chapter 11

Debtor.

## Notice of Preconfirmation Modified Plan

The Debtor initially filed a chapter 11, subchapter V plan on February 24, 2025. The Debtor filed a modified plan on September 30, 2025. Near the end of October, the U.S. Trustee's office requested revisions to Section III.C and Section VII.K.

Attached hereto is: (1) a clean copy of the Debtor's pre-confirmation modified plan dated November 3, 2025 and (2) a copy with changes tracked.

Section 1193 of Title 11 governs the modification of a subchapter V plan. Section 1193(a) provides that the debtor may modify a plan at any time before confirmation. Here, this modification does not change the treatment of any creditor. Rather, it merely conforms to the United States Trustee's expectations for a subchapter V trustee.

The Debtor respectfully requests that the court confirm this plan without requiring notice of the changes to all creditors and a new vote.

**MJB Law Firm, PLLC**

s/ Karl J. Johnson
Karl J. Johnson (#0391211)
7925 Stone Creek Drive, Suite 120A
Chanhassen, MN 55317
(612) 961-0145
karl@mjblawmn.com

***ATTORNEYS FOR DEBTOR***

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **In Re:**<br>**UMAPM HOLDING COMPANY, LLC,**<br>**Debtor.** | Chapter 11, Sub V<br>Case No. 24-43262 |

MODIFIED CHAPTER 11 PLAN OF REORGANIZATION
FOR SMALL BUSINESS DEBTOR UNDER SUBCHAPTER V[1]

Karl J. Johnson (#0391211)
MJB Law Firm, PLLC
3701 Shoreline Drive, STE 200A
Wayzata, MN 55391
612-961-0145
karl@mjblawmn.com

*Counsel to the Debtor-in-Possession*

Dated: November 3, 2025

[1] Pursuant to Bankruptcy Rule 3016(d), this Plan conforms substantially with Official Form 425A (Plan of Reorganization for small Business Under Chapter 11).

# TABLE OF CONTENTS


Article I. Disclosures ..... 5

A. Brief History of the Business Operations. ..... 5

B. Events Leading to Bankruptcy Filing. ..... 5

C. The Debtor's Assets and Liabilities. ..... 7

D. Plan Summary. ..... 9

E. Liquidation Analysis. ..... 9

F. Projections and Plan Feasibility. ..... 10

Article II. Classification of Claims and Interests ..... 10

Article III. Treatment of Non-Classified Claims ..... 11

A. Administrative Claims. ..... 11

B. Administrative Claims under Section 507(a)(2) of the Bankruptcy Code. ..... 12

C. Professional Fee Claims. ..... 12

D. Priority Tax Claims. ..... 12

Article IV. Treatment of Claims and Interests under Plan ..... 13

A. Treatment of Claims and Interests. ..... 13

B. Special Provision Governing Unimpaired Claims ..... 16

C. Confirmation Pursuant to section 1191(b) of the Bankruptcy Code ..... 16

D. Controversy Concerning Impairment ..... 16

Article V. Allowance and Disallowance of Claims ..... 16

A. Disputed Claims Process ..... 16

B. Prosecution of Objections to Claims ..... 17

C. Settlement of Disputed Claims. ..... 17

D. No Interest; Non-Compensatory Damages. ..... 17

Article VI. Executory Contracts and Unexpired Leases ..... 17

A. Assumption of Executory Contracts and Unexpired Leases....17

B. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases....18

C. Objections to Assumption of Executory Contracts and Unexpired Leases....19

D. Claims for Rejection Damages....19

E. Insurance Policies....19

F. Reservation of Rights....19

Article VII. Means for Implementation of the Plan....20

A. Global Settlement of Claims and Interests....20

B. Confirmation of the Plan under Section 1191(b)....20

C. Vesting of Assets in the Debtor....20

D. Management of the Business....20

E. Sources of Consideration for Plan Distributions....21

F. Disputed Claims Reserve....21

G. Delivery of Distributions....21

H. Claims Paid or Payable by Third Parties....23

I. Modification of the Plan....24

J. Default under the Plan; Appropriate Remedies....24

K. Termination of Subchapter V Trustee Service....25

L. Case Closure....25

Article VIII. Discharge of Claims and Release....25

A. Discharge....25

B. Release....26

C. Exculpation....26

D. Injunction....27

Article IX. General Provisions....27

A. Defined Terms. ....27

B. Rules of Interpretation. ....32

C. Computation of Time. ....33

Article X. Other Provisions. ....33

A. Confirmation Hearing and Objection Deadline. ....33

B. Acceptance and Rejection of Plan. ....33

C. Nonconsensual Confirmation. ....34

D. Immediate Binding Effect. ....34

E. Retention of Jurisdiction. ....34

F. Entire Agreement and Non-severability. ....34

G. Effect of Non-occurrence of Effective Date. ....35

H. Governing Law. ....35

I. Tax Consequences. ....35

J. Reservation of Rights. ....36

K. Waiver or Estoppel. ....36

L. Successors and Assigns. ....36

# ARTICLE I.
# DISCLOSURES

The Debtor proposes this Plan for the resolution of the outstanding Claims against the Debtor pursuant to Subchapter V of chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article IX of this Plan. The following disclosures are provided pursuant to section 1190(1) of the Bankruptcy Code.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests**. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Notice deadlines Plan voting and objection will be announced separately.**

*A. Brief History of the Business Operations.*

The company now known as UMAPM Holding Company, LLC d/b/a UMA Precision Machining ("UMA"), was established in 2000 and has grown from the founder's garage to working out of a 25,000 square foot state-of-the-art facility with more than a dozen employees, several with over 15 years' tenure. The Company's strategy is centered-on a highly-skilled engineering team and a culture for problem-solving and stepping up to challenging projects. The company has a strong reputation amongst medical device OEMs for handling challenging components that require significant upfront engineering and programming time. It has seen strong customer demand in 2024 and expects that trend to continue.

UMA is a contract manufacturer of medical devices located in Zimmerman, Minnesota. UMA provides prototyping and production manufacturing services to over 30 active customers in the medical device, medical instrumentation, and industrial instrumentation industries. UMA specializes in precision machining of highly complex components with tight tolerance requirements and leverages advanced capabilities including Swiss turning, 5-axis machining and wire EDM.

*B. Events Leading to Bankruptcy Filing.*

UMA invested heavily in quality and inspection and production staff during the period from 2019 through 2021. Due to these efforts, revenue increased from **$3.5M** in 2019 to **$4.7M** in 2021. Unfortunately, one of UMA's biggest customer's product families then moved close to a million dollars of annual volume to a lower cost manufacturer in Mexico. Another large customer's orthopedic implant failed to grow orders as projected. The higher costs remained through 2024 when revenue dropped to **$3.0M**. The following chart shows UMA's total revenue with a breakdown between those two customers and all other customers.




While the largest production customers shrank, the company maintains a stable base of more diversified medical device machining work. The two projects in 2021 represented 43% of total revenue. Today, over 80% of the company's revenue comes from medical device customers, with one product family representing 20% of revenue. Outside of this 20% project, the rest of the company's revenues are well diversified with no product family representing more than 5% of revenue.

In August 2024 the company executed a reduction in force and substantially reduced costs. At current expense levels, the company projects a profit if it generates $3.0M of revenue annually. September and October 2024 financials reflect this improved profitability.

The Debtor made significant investments into capital equipment in recent years, including 3 high-end swiss machines, an ultra-sonic cleaning system, a palletized 5-axis mill and a high-end CMM for part inspection. As a result, UMA has ample machine capacity to grow revenue and profits with minimal capital investment required.

Facing financial distress, the Debtor entered into a forbearance agreement with Choice Financial Group ("Choice") on September 3, 2024. Subsequently, the Debtor fell behind on rent payments to its landlord and an eviction hearing was scheduled for December 4, 2024.

In early November 2024, the Debtor negotiated a sale of the company on a price that was acceptable to Choice. This sale fell through because the landlord insisted that all lease arrears be cured immediately upon the closing of the sale. The Debtor filed a voluntary petition under Chapter 11 of Title 11 (the "Bankruptcy Code") on November 26, 2024 (the "Petition Date").

C. *The Debtor's Assets and Liabilities.*

1. Assets

As of the Petition Date, the Debtor had assets with an estimated book value of $2,624,367.38 and a forced liquidation value of $1,282,500.00. The Debtor's assets included $93,661.11 on deposit at Entre Bank and $1,685.00 on deposit at Choice. In addition, the Debtor had accounts receivable in the estimated amount of $288,513.27 as of the Petition Date, but $100,000.00 of the accounts receivable turned out to be unrecoverable. The Debtor had raw materials, work-in-progress, and finished goods inventory in the approximate amount of $178,258.00 as of the Petition Date, but the Debtor believes this raw materials, work-in-progress, and finished goods inventory had no resale value as of the Petition Date.

The Debtor has possession of two pieces of equipment under equipment leases: (1) a Matsuura MX-330 5-Axis Vertical Machining Center under a lease with Williams Equipment Fund LLC; and (2) a Ricoh C2004 EX Copier under a lease with U.S. Bank Marshall Equipment Finance (collectively, the "Leased Equipment"). Excluding the Leased Equipment, as of the Petition Date, the Debtor had CNC machines, milling machines, inspection equipment, and other equipment with an appraised fair market value of $1,872,500.00; an appraised Orderly Liquidation Value of $1,557,750.00;and a Forced Liquidation Value of $1,282,500.00 as of the Petition Date. Because an auction typically involves a commission of at least 15%, the Debtor expects that the equipment would yield net sale proceeds of no more than $1,090,125.

The Debtor believes that the Forced Liquidation Value of all its assets as of the Petition Date was:

| | |
|---|---|
| FLV Equipment net of auction commissions | $1,090,125.00 |
| Entre Bank Deposit | $93,661.11 |
| Choice Bank Deposit | $1,685.00 |
| Accounts Receivable | $188,513.27 |
| Raw Materials, WIP, finished Goods | $0 |
| **Total** | **$1,373,984.38** |

The first $1,050,000.00 of that amount belongs to Choice Bank on account of its secured claim. A more detailed liquidation analysis is discussed in Section I.E. below.

2. Liabilities

As of the Petition Date, the Debtor had aggregate liabilities in the estimated amount of $2,874,767.95, excluding debt owed to an insider.

a. Secured Claim

The only secured creditor is Choice, which holds a claim in the amount of approximately $2,691,023.90. The liabilities owed to Choice arise from a loan that was extended in early 2020. Choice attempted to perfect its security interests by filing a UCC-1 financing statement with the Secretary of State of Minnesota as filing number 1144696500020 on February 26, 2020 (the "Minnesota UCC") and asserted a blanket security interest in all assets.

Because the Debtor is a Delaware limited liability company, the Minnesota UCC was ineffective to perfect Choice's alleged liens. On September 17, 2024, two weeks after entering into the forbearance agreement with the debtor and 70 days before the Petition Date, Choice filed a UCC-1 financing statement with the Secretary of State of Delaware as filing number 2024 6416000 (the "Delaware UCC") and again asserted a blanket security interest in all assets. Because the Delaware UCC was filed within 90 days of the Petition Date and the Debtor was insolvent on the date the Delaware UCC was filed, it may be avoided as a preference under 11 U.S.C. § 547(b).

On March 28, 2025, the Debtor filed the complaint in Adversary Proceeding 25-04044 to avoid Choice's alleged liens. After mediation, the Debtor and Choice settled this adversary proceeding on the following terms: (1) Choice is granted an allowed secured claim in the amount of $1,050,000.00; (2) Choice's allowed secured claim will be amortized over 10 years with 5.00% interest, quarterly payments, and a balloon payment at the end of a 5-year subchapter V plan; (3) Choice's allowed secured claim, and the terms for repayment, will be documented in new loan documents that will include a requirement for monthly financial reporting; (4) the Debtor will be allowed to acquire and finance new equipment as long as there is no trade-in or other disposition of equipment subject to Choice's liens without Choice's prior written consent; (5) Choice will have an allowed unsecured claim for the remainder of Choice's claim and will receive all payments that would otherwise be payable to McChesney Holdings, Inc. based on the subordination agreement until Choice's claim is paid in full; (6) Choice will vote both its secured claim and its unsecured claim in favor of plan confirmation; and (7) the Debtor agrees to dismiss the adversary proceeding.

b. Priority Tax Claim

On February 12, 2025, the Minnesota Department of Revenue filed Proof of Claim No. 8 and asserted a priority tax claim in the amount of $100.00. On February 18, 2025, the Minnesota Department of Revenue withdrew Claim No. 8. The Debtor believes there are no priority tax claims.

c. General Unsecured Claims

In addition to the large unsecured claim held by Choice in the amount of $1,641,023.90, and excluding prepetition arrears owed to executory contract counterparties, the Debtor has general unsecured liabilities in an aggregate amount of approximately $1,195,263.07. These liabilities include an unsecured claim held by the U.S. Small Business Administration ("SBA") in the amount of $145,954.48 (POC #8); a claim owed to Productivity in the estimated amount of $69,716.39; a claim owed to WIPFLI LLP in the estimated amount of $33,510.74; a claim owed to JP Morgan Chase in the estimated amount of $21,970.87.00; a claim owed to McChesney Holdings, Inc. in the amount of $844,965.64 and various small claims owed to trade creditors. In the aggregate, there are estimated unsecured claims in the approximate amount of $2,836,286.97. Under the terms of a binding subordination agreement, any distributions owed on account of McChesney Holdings, Inc. on account of the $844,965.64 are to be paid directly to Choice until Choice's claim is paid in full. In the event that Choice is paid in full, any further distributions under this plan on account of McChesney Holdings, Inc.'s claim will be paid to McChesney Holdings, Inc.

*D. Plan Summary.*

1. <u>*Claims and Interests.*</u>

The Plan provides for the following Claims and Interests:

a. Administrative Claims.

b. Priority Tax Claims.

c. Other Priority Claims.

d. Secured Claim of Choice Financial Group.

e. Secured Claim of UMA Credit Group LLC.

f. Convenience Claims.

g. General Unsecured Claims.

h. Interests.

2. <u>*Treatment of Claims and Interests.*</u>

The Plan proposes to pay Allowed Administrative Claims and Priority Tax Claims in accordance with Article III. Holders of Claims in Classes 1, 2, and 3 should refer to Article III for information regarding the precise treatment of their Claim. Holders of Class 4 General Unsecured Claims will receive Pro Rata distributions, which the Debtor has valued as approximately 14 cents on the dollar. Holders of Interests shall retain their Interests in the Debtor.

The Plan Term is five years commencing on the Effective Date.

3. <u>*Means of Implementation.*</u>

The Debtor will satisfy Allowed Claims under the Plan with Cash in its possession, custody, or control on the Effective Date, Cash derived from its ongoing business operations, and Cash derived from its Projected Disposable Income during the term of the Plan.

*E. Liquidation Analysis.*

Often called the "best interests" test, sections 1129(a)(7) and 1190(1)(B) of the Bankruptcy Code require that a bankruptcy court find, as a condition to confirmation, that a 0 plan provides, with respect to each impaired class, that each Holder of a Claim or Interest in such impaired class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting Holder would receive or retain if the debtor liquidated under chapter 7.

Attached hereto as <u>**Exhibit A**</u> and incorporated herein by reference is a liquidation analysis (the "**Liquidation Analysis**") prepared by the Debtor. As reflected in the Liquidation Analysis,

the Debtor believes that liquidation of the Debtor's business under chapter 7 of the Bankruptcy Code would result in substantial diminution in the value to be realized by Holders of Claims or Interests as compared to distributions contemplated under the Plan. Consequently, the Debtor and its management believe the Confirmation of the Plan will provide a substantially greater return to Holders of Claims or Interests than would a liquidation under chapter 7 of the Bankruptcy Code.

*F. Projections and Plan Feasibility.*

Section 1190(1)(C) of the Bankruptcy Code requires a plan filed under Subchapter V of 0 to include projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization. In addition to this requirement, section 1129(a)(11) of the Bankruptcy Code requires the bankruptcy court to find that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor of the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization). If a class of claims or interests is impaired by the plan and does not accept the plan, section 1191(b) of the Bankruptcy Code requires the bankruptcy court to additionally find that the plan is fair and equitable, with respect to such class of claims or interests as a condition to plan confirmation. To conclude that the plan is fair and equitable to each nonconsenting impaired class, the bankruptcy court must find that: (1) with respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code; (2) as of the effective date of the plan, all of the projected disposable income of the debtor to be received during the plan term, or its equivalent value, will be applied to make payments under the plan; and (3)(i) the debtor will be able to make all payments under the plan, or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan. See 11 U.S.C. § 1191(c).

To comply with section 1190(1)(C) and determine whether the Plan meets the forgoing feasibility requirements, the Debtor has analyzed its ability to meet its obligations under the Plan. As part of this analysis, the Debtor has prepared its financial projections (the "**Financial Projections**") attached hereto as **Exhibit B** and incorporated herein by reference. Based on the Financial Projections, the Debtor believes that it will be a viable operation following the Bankruptcy Case and that the Plan will meet the feasibility requirements of the Bankruptcy Code.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Except for the Claims addressed in Article III of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that

such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Interests in the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Choice Financial Group | Impaired | Entitled to Vote |
| Class 2 | UMA Credit Group LLC | Impaired | Entitled to Vote |
| Class 3 | Convenience Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## ARTICLE III.
## TREATMENT OF NON-CLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article II.

*A. Administrative Claims.*

Subject to section B of this Article, and unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

*B. Administrative Claims under Section 507(a)(2) of the Bankruptcy Code.*

Pursuant to section 1191(e) of the Bankruptcy Code, each Holder of an Allowed Administrative Claim arising under section 507(a)(2) of the Bankruptcy Code will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter, and ending not later than August 30, 2025; provided, however, that nothing in this section shall prohibit the Debtor from satisfying such Allowed Administrative Claim earlier than August 30, 2025 through one or more Cash payments.]

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Confirmation Date.

*C. Professional Fee Claims.*

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Professional Fee Claims must be filed no later than thirty (30) days after the Confirmation Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, or order of the Bankruptcy Court. The Debtor shall pay Professional Fee Claims in Cash in the amount allowed by the Bankruptcy Court within five (5) Business Days of allowance. So long as the estate exists post-confirmation, any post-confirmation fees of the Subchapter V Trustee and any professionals hired by the Subchapter V Trustee (if any) shall be subject to approval by the Court pursuant to 11 U.S.C. § 503(b). Upon Court approval of any such post-confirmation administrative expenses, the Debtors will pay such approved administrative expense in the ordinary course of business, unless otherwise agreed to by the particular claimant.

*D. Priority Tax Claims.*

To the extent not previously paid during the Bankruptcy Case, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Priority Tax Claim, payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) the date such Priority Tax Claim becomes due and Allowed or as otherwise Allowed by the Bankruptcy Court and ending not later than five (3) years from the Petition Date; provided, however, that nothing in this section shall prohibit the Debtor from satisfying such Allowed Priority Tax Claim earlier than five (3) years from the Petition Date through one or more Cash payments. Until satisfied, an Allowed Priority Tax Claim shall accrue interest no earlier than the Effective Date and at the non-default rate determined under applicable non-bankruptcy law pursuant to § 511(b) of the Bankruptcy Code.

# ARTICLE IV.
# TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

*A. Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1. <u>*Class 1 – Choice Financial Group*</u>

a. *Classification*: Class 1 consists of the Claim of Choice.

b. *Allowance*: On the Effective Date, the Claim of Choice shall be bifurcated pursuant to section 506(a)(1) of the Bankruptcy Code, and Choice shall have an Allowed Secured Claim in the amount of $1,050,000.00 and an Allowed General Unsecured Claim in the amount of $1,641,023.90.

c. *Treatment*: Choice shall receive, in satisfaction of its Allowed Secured Claim, quarterly payments based on a ten year amortization at 5.00% interest with a balloon payment due at the conclusion of the Debtor's five-year subchapter V plan. The Allowed General Unsecured Claim of Choice shall be treated as a Class 3 Claim, unless Choice elects on its Ballot to have its General Unsecured Claim allowed in an amount no greater than $10,000.00, in which case the Claim will be treated as a Class 2 Convenience Claim. Notwithstanding the foregoing, Choice may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

d. *Lien Retention*: Choice shall retain its existing Lien on its collateral until the payment in full of its Allowed Secured Claim. Upon the satisfaction of the Allowed Secured Claim, (i) all credit agreements, notes, mortgages, security agreements, invoices, contracts, agreements, and any other documents, instruments and judgments evidencing the Class 1 Claim, together with any and all Liens securing the same, shall be canceled, discharged and released without further act or action by Choice under any applicable agreement, law, regulation, order or rule; (ii) the obligations of the Debtor thereunder shall be deemed cancelled, discharged, and released; and (iii) all of the right, title and interest of Choice under any Liens, security interests or judgments, including any rights to any collateral thereunder, will revert to the Debtor. The Debtor may file a UCC-5 financing statement to reflect the satisfaction of the Class 1 Claim.

e. *Voting*: Class 1 is impaired under the Plan and Choice is entitled to vote to accept or reject the Plan.

2. <u>*Class 2—DIP Loan*</u>

a. *Classification*: Class 2 consists of the secured claim held by UMA Credit Group LLC (the "DIP Lender") in the amount of $100,000.00 plus accrued interest.

b. *Treatment*: The DIP Lender shall receive, in full and final satisfaction of such Claim, sixty (60) newly issued Class A Units in UMAPM Holding Company, LLC. This conversion of the DIP Lender's claim to equity is exempt from securities laws pursuant to 11 U.S.C. § 1145. After the conversion, there will be a total of one hundred sixty (160) outstanding Class A Units. The sixty (60) units will represent approximately 37.5% of the equity in the Debtor.

3. <u>*Class 3 – Convenience Claims*</u>

a. *Classification*: Class 3 consists of General Unsecured Claims (i) that are Allowed in an amount equal to or less than $10,000.00 or (ii) in an amount greater than $10,000.00, but which the Holder thereof elects on its Ballot to be Allowed in an amount no greater than $10,000.00 and to be treated as a Convenience Claim.

b. *Allowance*: As of the date of this Plan, there are approximately 45 Convenience Claims, with aggregate Allowed claims in the amount of approximately $79,234.40.

c. *Treatment*: Each Holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of Cash equal to $20,000.00 on the later of (i) ninety (90) days after the Effective Date; or (ii) when such Claim, or any portion of such Claim, becomes due and payable under the parties' contract or applicable law. Based on the estimates in subsection b above, this is a distribution of approximately 25%.

d. In lieu of receiving the treatment provided in Class 3, any Holder of a Convenience Claim may elect on its Ballot to have its Claim treated as a General Unsecured Claim in Class 4.

e. *Voting*: Class 3 is impaired under the Plan and Holders of Convenience Claims shall be entitled to vote to accept or reject the Plan.

4. <u>*Class 4 – General Unsecured Claims*</u>

a. *Classification*: Class 4 consists of Holders of General Unsecured Claims, including the Allowed General Unsecured Claims of Choice.

b. *Treatment*: On the Effective Date, each Holder of a General Unsecured Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim's Pro Rata share of Projected Disposable Income in the aggregate amount of $400,000.00, which should result in a recovery of approximately 14% of the Allowed amount of a Holder's General Unsecured Claim, according to the Financial Projections set forth on Exhibit B. Commencing on the Effective Date and concluding no later than the fifth anniversary of the Effective Date, the Debtor shall distribute the Cash to each Holder semi-annually; provided, however, that distributions owed on account of the claim of McChesney Holdings, Inc. will be paid directly to Choice pursuant to a binding subordination agreement. Notwithstanding the foregoing, a Holder may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor. Payments on account of General Unsecured claims are anticipated to be paid as follows:

| | |
|---|---:|
| November 30, 2025 | $40,000.00 |
| May 30, 2026 | $40,000.00 |
| November 30, 2026 | $40,000.00 |
| May 30, 2027 | $40,000.00 |
| November 30, 2027 | $40,000.00 |
| May 30, 2028 | $40,000.00 |
| November 30, 2028 | $40,000.00 |
| May 30, 2029 | $40,000.00 |
| November 30, 2029 | $40,000.00 |
| May 30, 2030 | $40,000.00 |
| Total | $400,000.00 |

c. *Compliance with Section 1191(b)*: If Class 4 votes to reject the Plan, Holders of Class 4 Allowed General Unsecured Claims shall receive the treatment set forth above and shall additionally be entitled to exercise the remedies set forth in Article VII.J. The Debtor submits that such treatment satisfies the requirements of section 1191(b).

d. *Class 3 Election*: In lieu of receiving the treatment provided in Class 4, any Holder of a General Unsecured Claim may elect on its Ballot to have its

Claim treated as a Convenience Claim in Class 3 in an amount up to $10,000.00.

e. *Voting*: Class 4 is Impaired under the Plan and Holders of General Unsecured Claims shall be entitled to vote to accept or reject the Plan.

5. *Class 5 – Interests*

a. *Classification*: Class 5 consists of Holders of Interests in the Debtor.

b. *Treatment*: On the Effective Date, each Holder shall retain their Interests in the Debtor in the same number of Class A Units that existed on the Petition Date, except as diluted by the conversion of the DIP Loan to equity.

c. *Voting:* Class 5 is Unimpaired under the Plan. The Holders of Interests in Class 5 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders are not entitled to vote to accept or reject the Plan.

*B. Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

*C. Confirmation Pursuant to section 1191(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.A of the Plan. The Debtor shall seek Confirmation of the Plan pursuant to section 1191(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*D. Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE V.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

*A. Disputed Claims Process.*

Except as otherwise provided herein, if a party files a Proof of Claim and the Debtor has not determined, without the need for notice to, or action, order or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be deemed Disputed unless and until Allowed, resolved by agreement of the parties, or disallowed by a Final Order. Only the claims of Choice, the DIP Lender, and the SBA are being Allowed by operation of the Plan.

Except as otherwise provided herein, all Proofs of Claim filed after the Proof of Claim Bar Date or Governmental Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, without the need for any objection by the Debtor or the Subchapter V Trustee, or any further notice to, or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, on and after the Effective Date, the Debtor may negotiate and settle any Claims, including Claims for which a Proof of Claim has been filed, without further notice to or approval of the Bankruptcy Court or any other party.

*B. Prosecution of Objections to Claims.*

Any objections to Claims or Interests, other than Claims of a Governmental Unit, shall be served and filed on or before the 30th day after the Effective Date or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Holder (the "**Claims Objection Deadline**"). Any objections to Claims of a Governmental Unit, shall be served and filed on or before the 30th day after the deadline for Governmental Units to file Proofs of Claim pursuant to Bankruptcy Rule 3002(c)(1) or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Governmental Unit (the "**Governmental Claims Objection Deadline**"). All Claims and Interests that the Debtor or Subchapter V Trustee have not objected to by the Claims Objection Deadline or Governmental Claims Objection Deadline, as applicable, shall be deemed Allowed.

*C. Settlement of Disputed Claims.*

The Debtor or the Subchapter V Trustee, as applicable, shall have the power and authority to settle and compromise a Disputed Claim subject to compliance with Bankruptcy Rule 9019 and approval by the Bankruptcy Court.

*D. No Interest; Non-Compensatory Damages.*

Unless otherwise specifically provided for in the Plan or by Final Order, post-petition interest or penalty shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest or penalty accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest or penalty shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption of Executory Contracts and Unexpired Leases.*

The Confirmation Order will constitute an order of the Bankruptcy Court approving the following as of the Effective Date pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code: (i) the assumption of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit C** hereto; and (ii) the rejection of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit D**. Until the conclusion of the Confirmation Hearing, the Debtor shall have the right to remove any Executory Contracts or Unexpired Leases from **Exhibit C** and include such removed Executory Contracts or Unexpired Leases on **Exhibit D**.

Except as otherwise provided herein or agreed to by the Debtor with the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Bankruptcy Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

*B. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Debtor shall pay an amount sufficient to cure any default as is required under 11 U.S.C. § 365(b) (the "Cures"), if any, in the amounts and by the deadlines set forth on **Exhibit C**. Any contract that is not listed on **Exhibits C** or **D** shall be deemed assumed without the requirement of the Debtor to pay any Cure. If there is any dispute regarding any Cure, the ability of the Debtor to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, objection to the proposed assumption of the Executory Contract or Unexpired Lease, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption, or as may be agreed upon by the Debtor and the counterparty to the Executory Contract or Unexpired Lease.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor to a counterparty must be filed with the Bankruptcy Court on or before the Voting Deadline. Any such request, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor without the need for any objection by the Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor of the Cure; provided that nothing herein shall prevent the Debtor from paying Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Debtor may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article VI shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Bankruptcy Case, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article VI, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

*C. Objections to Assumption of Executory Contracts and Unexpired Leases.*

Any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, including any objection to the proposed Cure, must be filed with the Bankruptcy Court by the Voting Deadline. Any such objection, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of an Executory Contract or Unexpired Lease will be deemed to have consented to such assumption. The Debtor may settle any such objections without any further notice to, or action, order or approval of, the Bankruptcy Court.

*D. Claims for Rejection Damages*

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected, if any, shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date. Any rejection damages Claim represented by an untimely Proof of Claim shall: (i) be Disallowed without the need for any further notice to, or action, order, or approval of, the Bankruptcy Court; (ii) be forever barred, estopped, and enjoined from assertion; (iii) not be enforceable against the Debtor; and (iv) be deemed fully satisfied, released, and discharged notwithstanding anything in a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 6 Convenience Claims or Class 7 General Unsecured Claims, as applicable.

*E. Insurance Policies.*

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Debtor.

*F. Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have thirty (30) days following entry of a Final Order such dispute to alter its treatment of such contract or lease under the Plan.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A. Global Settlement of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, release, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. Subject to Article VII hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

*B. Confirmation of the Plan under Section 1191(b).*

The Debtor requests that the Bankruptcy Court confirm the Plan under section 1191(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

*C. Vesting of Assets in the Debtor.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in the Estate, Cause of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action that are not addressed in this Plan without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

*D. Management of the Business.*

Except as provided in any agreement approved by the Bankruptcy Court, John Siami shall operate and manage the business of the Debtor after the Effective Date. John Siami is an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code. In exchange for his services as Manager, John Siami will receive $180,000.00 in annual compensation from the Debtor payable biweekly in the amount of $6,923.08 and the same employee benefits that are available to other employees of the Debtor.

*E. Sources of Consideration for Plan Distributions.*

The Debtor shall use Cash on hand, working capital, and Cash from ongoing business operations to fund distributions to certain Holders of Allowed Claims, consistent with the terms of the Plan. Pursuant to section 1190(2) of the Bankruptcy Code, the Plan provides for the submission of all or such portion of the future earnings of the Debtor as is necessary for the execution of the Plan.

*F. Disputed Claims Reserve.*

The Debtor shall establish and maintain a reserve (the "**Disputed Claims Reserve**") equal to the aggregate amount that would have been distributed to Holders of Disputed Claims in connection with interim distributions.

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged.

*G. Delivery of Distributions.*

1. <u>Disbursing Agent.</u>

Notwithstanding sections 1191(b) and 1194 of the Bankruptcy Code, the Debtor and not the Subchapter V Trustee shall act as the Disbursing Agent under the Plan.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursements claim (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Debtor.

2. *Delivery of Distributions.*

Unless otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's record as of the date of any such distribution; *provided* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

3. *Time Bar to Negotiate Distribution Checks.*

Holders of Allowed Claims shall have ninety (90) days from the date of issuance of a distribution to negotiate a check issued by the Disbursing Agent. If a Holder fails to negotiate a disbursement check within ninety (90) days, the Disbursing Agent shall have the right to void the check, and any current and/or future claims of such Holder shall be treated as Unclaimed Distributions (defined below).

4. *Undeliverable Distributions.*

If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Debtor and the Disbursing Agent shall be authorized to treat such Holder's current and future distribution on account of its Allowed Claim as Unclaimed Distributions (defined below).

The Disbursing Agent shall have no obligation to make more than two (2) attempts to obtain the Holder's current address. Any distribution that remains undeliverable after six (6) months of the date the distribution was first attempted shall become an Unclaimed Distribution (defined below).

5. *Unclaimed Distributions; Reversion.*

Any distribution made by the Disbursing Agent to a Holder of an Allowed Claim that is undeliverable for more than six (6) months or has not been negotiated within ninety (90) days from the date of issuance of the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall revest with the Debtor. Upon such revesting, (i) the Claim of any

Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary, and (ii) such Holder shall not be entitled to receive any further distributions on account the Allowed Claim relating to such Unclaimed Distribution.

6. <u>*Subchapter V Trustee Disbursement to Holders of Class 4 Claims.*</u>

a. Notwithstanding Article VII.F of the Plan, in the event that the Bankruptcy Court does not authorize the Debtor to serve as the Disbursing Agent, the Subchapter V Trustee shall serve as Disbursing Agent with respect to Classes 3 and 4 under the supervision of the United States Trustee. Post-Confirmation Fees and Expenses of the Subchapter V Trustee. In addition to the right to receive payment for fees and expenses incurred as a Disbursing Agent set forth in Article VII.F, the Subchapter V Trustee shall be entitled to recoup reasonable fees and costs incurred in performing his obligations as Disbursing Agent under this paragraph from any Cash that he receives from the Debtor under the Plan. Contemporaneously with making a distribution to Holders in Class [--], the Subchapter V Trustee shall deliver a fee and expense statement to the Debtor, the Office of the United States Trustee, and Holders of Allowed Unsecured Claims in Class 4 (the "**Notice Parties**"). The Notice Parties shall have fourteen (14) days to submit to the Subchapter V Trustee a written objection to the requested fees and/or expenses. In the absence of a timely-served objection, the Subchapter V Trustee shall be authorized to draw on the funds in the Disbursement Account in satisfaction of his fees and expenses. If a party objects to the requested fees and/or expenses, the Subchapter V Trustee shall be authorized to resolve the objection with the consent of the objecting party and upon notice to the Notice Parties. If the parties are unable to reach a resolution to the objection, the Subchapter V Trustee may move to authorize and allow payment of the requested fees and expenses with the Bankruptcy Court.

*H. Claims Paid or Payable by Third Parties.*

1. <u>*Claims Paid by Third Parties.*</u>

The Debtor shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Disbursing Agent or the Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Disbursing Agent or the Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2. *Claims Payable by Third Parties.*

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (in and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. *Applicability of Insurance Policies.*

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provision of any applicable insurance policy. Notwithstanding anything to the contrary contained herein, nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers, under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

*I. Modification of the Plan.*

The Debtor may modify the Plan subject to the requirements and limitations of section 1193 of the Bankruptcy Code. Consistent with Article VII.B, the Debtor may modify the Plan to the extent that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

The Debtor may, without notice to Holders of Claims or Interests, insofar as it does not materially or adversely affect the interests of any such Holders, correct any defect or omission in the Plan and any schedule or exhibit to the Plan. Provided, however, that nothing in this Plan shall limit the rights of any Party in Interest to seek an adjudication of any modification from the Court.

*J. Default under the Plan; Appropriate Remedies.*

If the Plan has been confirmed under section 1191(a) of the Bankruptcy Code and the Debtor fails to timely perform its obligations under the Plan with respect to one or more Holders of Allowed Claims then, notwithstanding the injunction set forth in Article VIII.D, such Holders shall be entitled to pursue any rights and remedies that such Holders may have under applicable law, including but not limited to foreclosure of Liens, and bringing an action against the Debtor for breaching its obligations under the Plan and seeking monetary and/or injunctive relief; provided that the Debtor shall have ninety (90) days to cure any default with respect to its obligations to Class 4 before any Holders of Allowed Claims in such Class may be allow to pursue any rights or remedies that such Holders may have under applicable law.

In addition to the foregoing, if the Plan has been confirmed under section 1191(b) of the Bankruptcy Code, and the Debtor fails to timely perform its obligations under the Plan with respect

to one or more Impaired Classes that has not accepted the Plan, then: (i) the Debtor shall have ninety (90) days to cure any default with respect to such Impaired Classes; (ii) if the Debtor is unable to cure such default, it shall, no later than forty-five (45) days from the expiration of the time allotted in clause (i), file a modified plan supported by a revised projected disposable income analysis, which plan shall propose treatment of the Impaired Classes consistent with section 1191; and (iii) the Debtor shall move for the Bankruptcy Court to approve the Plan, as modified, after notice and a hearing. If the Debtor fails to comply with this paragraph after failing to perform its obligations under the Plan with respect to one of more Impaired Classes or fails to obtain a Final Order approving modifications to the Plan that are sufficient to ensure that Holders of Allowed Claims in each Impaired Class are not discriminated against unfairly and receive fair and equitable treatment, then any party in interest may move to convert the Bankruptcy Case to one under chapter 7, and the Debtor shall not oppose such motion.

*K. Termination of Subchapter V Trustee Service.*

If the Plan is confirmed pursuant to section 1191(a) of the Bankruptcy Code, the Subchapter V Trustee's service in the Bankruptcy Case shall terminate once the Plan has been substantially consummated (as defined by section 1101(2) of the Bankruptcy Code), or the Bankruptcy Case is dismissed or converted to another chapter of the Bankruptcy Code. No later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file and serve a notice of such substantial consummation pursuant to 1183(c)(2). The Subchapter V Trustee's services shall be terminated upon substantial consummation and the submission of the Subchapter V Trustee's final report pursuant to 11 U.S.C. Section 1183(b)(1) and Section 704(a)(9).

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Subchapter V Trustee's service in the Bankruptcy Case shall terminate upon the entry of a final decree closing the Bankruptcy Case, or upon the dismissal or conversion of the Bankruptcy Case to another chapter of the Bankruptcy Code.

*L. Case Closure.*

If the Plan is confirmed pursuant to section 1191(a), upon substantial consummation of the Plan, the Debtor shall file: (i) the notice required under section 1183(c)(2); and (ii) a motion for entry of final decree closing the Bankruptcy Case pursuant to Bankruptcy Rule 3022.

If the Plan is confirmed pursuant to section 1191(b), upon completion of all payments due under the Plan to Holders of Claims in Classes 4, the Debtor shall file a motion for entry of final decree closing the Bankruptcy Case pursuant to Bankruptcy Rule 3022. The Subchapter V Trustee's service shall terminate upon the entry of the final decree.

## ARTICLE VIII.
## DISCHARGE OF CLAIMS AND RELEASE

*A. Discharge.*

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of the Plan, to

the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code. The Debtor will not be discharged from any debt imposed by the Plan or to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to section 1141(d)(A) of the Bankruptcy Code and all Administrative Claims upon completion of all payments due during the Plan Term and the Bankruptcy Court's entry of an order of discharge pursuant to section 1192 of the Bankruptcy Code; *provided* that the order of discharge shall not apply to any debt for which the last payment is due after the Plan Term has completed.

*B. Release.*

Upon entry of the order of discharge, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan: (i) each Holder of a Claim that votes to accept the Plan; and (ii) to the fullest extent permissible under applicable law, each Entity that has held, holds, or may hold a Claim or at any time was a creditor of the Debtor and that does not vote on the Plan or votes to reject the Plan, in each case will be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, rights, Causes of Action, and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan that such Entity has, had or may have against the Debtor, the Estate, and the Debtor's assets.

*C. Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, filing, or termination of the Plan and related transactions, created or entered into since the Petition Date, the pursuit of Confirmation, the pursuit of Substantial Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that constitutes actual fraud, willful misconduct, or gross negligence, but in all respects such Entities may assert the affirmative defense that they reasonably relied upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*D. Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor or its property or assets on account of or in connection with or with respect to such Claims; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property or assets on account of or in connection with or with respect to such Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtoror its property or assets on account of or in connection with or with respect to such Claims unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date; and (5) commencing or continuing in any manner any actions or other proceeding of any kind on account of or in connection with or with respect to any such Claim released or settled pursuant to the Plan.

## ARTICLE IX.
## GENERAL PROVISIONS

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. **"Administrative Claim"** means a Claim for costs and expenses of administration of the Estate under section 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the business of the Debtor; and (b) Allowed Professional Fee Claims.

2. **"Allowed"** means, as to a Claim or Interest, proof of which was timely and properly filed or, if no proof of Claim or Interest was filed, which has been or hereafter is listed in the Schedules, as liquidated in an amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (b) an objection has been interposed and such Claim or Interest has been allowed, in whole or in part, by a Final Order and/or by the agreement of the holder of such Claim or Interest. With respect to an Administrative Claim, "Allowed" shall mean any Administrative Claim, or any portion thereof, with respect to which both (a) a timely and proper request for payment has been made to the extent required by the Plan,

the Confirmation Order, or by any other order of the Bankruptcy Court, and (b) such Administrative Claim is allowed by the Bankruptcy Court. Allowed Claims shall not include Disputed Claims or Disallowed Claims.

3. **"Ballot"** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject the Plan.

4. **"Bankruptcy Case"** means the Debtor's bankruptcy case pending in the Bankruptcy Court, Case No. 24-43262.

5. **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532.

6. **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Minnesota.

7. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated under section 2075 of title 28 of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court.

8. **"Proof of Claim Bar Date"** means April 8, 2025, the deadline for Holders of Claims (other than Governmental Units) to file a Proof of Claim against the Estate in the Bankruptcy Case.

9. **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

10. **"Cash"** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

11. **"Cause of Action"** means any action, claim, cross-claim, third-party claim, cause of action, chose in action, controversy, dispute, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foresee or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

12. **"Claim"** means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

13. **"Class"** means a class of Claims or Interests as set forth in Article II hereof pursuant to section 1122(a) of the Bankruptcy Code.

14. **"Confirmation"** means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Bankruptcy Case.

15. **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

16. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1191 of the Bankruptcy Code, as such hearing may be continued from time to time.

17. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1191 of the Bankruptcy Code, together with any supplementary exhibits, appendices, and related documents.

18. **"Convenience Claim"** means any General Unsecured Claim that is (i) Allowed in an amount equal to or less than $10,000 or (ii) in an amount that is greater than $10,000, but which the Holder thereof elects on its Ballot to be Allowed in an amount no greater than $10,000 and to be treated as a Convenience Claim in accordance with the Plan.

19. **"Cure"** means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's default under an Executory Contract or an Unexpired Lease assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

20. **"Debtor"** has the meaning set forth in the preamble to the Plan and shall include the reorganized Debtor after the Effective Date of the Plan, as applicable.

21. **"Disallowed"** means as to a Claim, or any portion thereof, that: (a) has been disallowed or expunged by a Final Order; (b) has been listed by the Debtor in the Schedules in the amount of "$0.00" or as unliquidated in amount, disputed, contingent, or unknown and for which no Proof of Claim has been filed prior to the applicable deadline; or (c) unless otherwise specified herein or by Final Order, any interest, fees, and charges, and any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or any other claims or obligations that do not compensate for actual losses.

22. **"Disbursing Agent"** means, as applicable, the Debtor or any Entity the Debtor selects to make or to facilitate distributions in accordance with the Plan.

23. **"Disposable Income"** shall have the meaning set forth in section 1191(d) of the Bankruptcy Code.

24. **"Disputed"** means as to a Claim, or any portion thereof, that: (a) is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order; (d) if held by an Entity that is a defendant in a pending Avoidance Action, or has failed to pay or turn over property as required by section 502(d) of the Bankruptcy Code; or (e) is otherwise disputed

by the Debtor or the Subchapter V Trustee after the Effective Date, in accordance with applicable law.

25. **"Exculpated Parties"** means, collectively, and in each case in its capacity as such: (i) the Debtor; (ii) the Subchapter V Trustee; and (iii)each current director, manager, officer, employee, trustee, advisory board member, attorney, accountant, representative, and other professional and advisor who was employ during the Bankruptcy Case with respect to clauses (i) through (iii).

26. **"Effective Date"** means the date that is the first Business Day: (i) following the date that is fourteen (14) days after the Confirmation Date; or (ii) if a stay of the Confirmation Order is in effect, the first Business Day after the date on which the stay of the Confirmation Order expires or is otherwise terminated. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

27. **"Entity"** means any entity, as defined in section 101(15) of the Bankruptcy Code.

28. **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to sections 541 and 1186 of the Bankruptcy Code.

29. **"Executory Contract"** means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

30. **"Final Decree"** means the decree contemplated pursuant to Bankruptcy Rule 3022.

31. **"Final Order"** means an order of judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal, seek certiorari, or move for a new trial, stay, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending; or (b) if any appeal, certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule, may be filed relating to such order or judgment, shall not cause such order or judgment not to be a Final Order.

32. **"General Unsecured Claim"** means any Claim that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, or (e) a Claim under Classes 1, 2, 3, and 5.

33. **"Government Bar Date"** means May 27, 2025, the deadline for a Governmental Unit to file a Proof of Claim against the Estate in the Bankruptcy Case.

34. **"Governmental Unit"** means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

35. **"Impaired"** means, with respect to any Class of Claims or Interests, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

36. **"Interests"** means any equity or membership interest in the Debtor, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, any other right to purchase or otherwise receive any ownership interest in the Debtor, or other interest or related right to payment or compensation based upon such interest, existing on or before the Effective Date.

37. **"Lien"** means a lien as defined in section 101(37) of the Bankruptcy Code.

38. **"Liquidation Analysis"** shall have the meaning set forth in Article I.D. The Debtor's Liquidation Analysis is attached to the Plan as **Exhibit A**.

39. **"Other Priority Claim"** means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

40. **"Other Secured Claim"** means any secured Claim, other than a claim of Choice Financial Group, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

41. **"Person"** has the meaning set forth in section 101(14) of the Bankruptcy Code.

42. **"Petition Date"** means the date on which the Debtor commenced the Bankruptcy Case.

43. **"Plan"** means this plan of reorganization, including all exhibits, supplements, appendices, and schedules, in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

44. **"Plan Term"** means the duration of time from the Effective Date through the [third] anniversary of the Effective Date.

45. **"Priority Tax Claims"** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, including a Secured Claim of a Governmental Unit which would otherwise meet the description of an unsecured Claim under section 507(a)(8), but for the secured status of the Claim.

46. **"Pro Rata"** means, unless otherwise specified, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

47. **"Proof of Claim"** means a proof of Claim filed against the Debtor in the Bankruptcy Case.

48. **"Professional"** means: (a) an Entity employed pursuant to sections 327, 363, or 1103 of the Bankruptcy Code; (b) the Subchapter V Trustee; and (c) an Entity awarded

compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

49. **"Professional Fee Claim"** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, and 503(b) of the Bankruptcy Code.

50. **"Projected Disposable Income"** shall have the meaning set forth in Article I.E.

51. **"Reinstate"** means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

52. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be supplemented or amended from time to time.

53. **"Secured Claim"** means any Claim that is secured by a valid, perfected and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

54. **"Solicitation"** means that solicitation of votes in connection with the Plan pursuant to section 1126 of the Bankruptcy Code.

55. **"Solicitation Procedures Order"** means the order entered by the Bankruptcy Code setting the date for the Confirmation Hearing, and establishing deadlines for submitting Ballots, objecting to the Plan and the proposed assumption of Executory Contracts and Unexpired Leases, among other relief.

56. **"Subchapter V Trustee"** shall refer to Steven Nosek, appointed pursuant to section 1183(a) of the Bankruptcy Code in the Bankruptcy Case.

57. **"Unclaimed Distribution"** shall have the meaning provided in Article VII.E.

58. **"Unexpired Lease"** means a lease to which the Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

59. **"Unimpaired"** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

60. **"Voting Deadline"** means the deadline for submitting Ballots established in the Solicitation Procedures Order.

*B. Rules of Interpretation.*

For the purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) any immaterial effectuating provisions may be interpreted by the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (10) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## ARTICLE X.
## OTHER PROVISIONS

*A. Confirmation Hearing and Objection Deadline.*

The Bankruptcy Court will schedule the Confirmation Hearing to consider whether the Plan satisfies the various requirements of the Bankruptcy Code and Bankruptcy Rules. Any objection to the Plan shall be filed by the objection deadline set forth in the Solicitation Procedures Order.

*B. Acceptance and Rejection of Plan.*

The Debtor shall provide all Holders of Allowed Claims in an Impaired Class with a Ballot. Such Holders may vote to accept or reject the Plan by completing, dating, signing and causing to the Ballot to be returned to the Debtor's counsel by the voting deadline set forth in the Solicitation Procedures Order.

Pursuant to section 1126 of the Bankruptcy Code, an Impaired Class shall have accepted the Plan if (i) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan, and (ii) the Holders of more

than one-half (1/2) in number of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan (in both instances, acceptance or rejection by such Holders shall be made in good faith). If necessary and applicable for Confirmation of the Plan, the Debtor reserves the right to request that the Bankruptcy Court address whether the Plan may be deemed accepted or rejected by any Impaired Class for which no Holder has returned a Ballot voting to accept or reject the Plan.

*C. Nonconsensual Confirmation.*

The Bankruptcy Court shall confirm the Plan under section 1191(a) of the Bankruptcy Code if all of the requirements of section 1129(a) of the Bankruptcy Code are met, including, among other things making a finding that all Impaired Classes have voted to accept the Plan.

If one or more Impaired Class votes to reject the Plan, the Bankruptcy Court shall confirm the Plan upon a finding that the Debtor has satisfied the requirements of section 1191(b) with respect to each rejecting Impaired Class.

*D. Immediate Binding Effect.*

Upon the occurrence of the Effective Date, the terms of the Plan, and any documents supplemental to the Plan, shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

*E. Retention of Jurisdiction.*

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising out of, and related to, the Plan, the Confirmation Order, and the Bankruptcy Case to the fullest extent permitted by law, including but not limited to: (i) determining the allowance of compensation and expenses of Professionals; (ii) hearing and deciding any and all adversary proceedings, applications, and contested matters; (iii) determining issues or disputes relating to the assumption of Executory Contracts and Unexpired Leases and any claims related thereto; (iv) determining disputes as to classification or allowance of Claims or Interests; (v) resolving any dispute between or among any of the parties to the Bankruptcy Case; (vi) ruling on any modification of the Plan proposed under section 1193; (vii) determining other such matters as may be set forth in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; (viii) entering a final decree closing the Bankruptcy Case; (ix) correcting any defect, cure any omission or reconciling any inconsistency in this Plan or Confirmation Order; and (x) issuing such orders or injunctions as may be necessary to execute, implement, or consummate the Plan, or taking such other actions as may be necessary to restrain interference by any Entity with consummation or enforcement of the Plan.

*F. Entire Agreement and Non-severability.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtor or, prior to the termination of his services, the Subchapter V Trustee's consent; and (ii) non-severable and mutually dependent.

*G. Effect of Non-occurrence of Effective Date.*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgment, offer or undertaking by the Debtor.

*H. Governing Law.*

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to conflict-of-laws principles.

*I. Tax Consequences.*

The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto. There can be no assurance that the Internal Revenue Service or any state or local taxing authorities will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

FOR THE FOREGOING REASONS, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE, AND LOCAL) TO THEM OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR EQUITY HOLDER, NOR IS THE DEBTOR RENDERING ANY FORM OR LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.

*J. Reservation of Rights.*

The Debtor reserves the right to, among other things: (i) contest the right of the Holder of any Claim to vote on the Plan, or designate the vote of the Holder of any Claim; (ii) contest the right of the Holder of any Claim to receive distributions under the Plan; (iii) contest the validity of a creditor's Lien or security interest; (iv) seek to subordinate any Claim for inequitable conduct or otherwise; and (v) to pre-pay all or a portion of an Allowed Claim. Except as otherwise provided, no assets shall be deemed abandoned and no defense, set-off, counterclaim, or right of recoupment of the Debtor shall be deemed waived, released, or compromised.

*K. Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor, or any other Entity, if such agreement was not disclosed in the Plan or any documents supplementary to the Plan prior to the Confirmation Date.

*L. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, success or assign, affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

UMAPM Holding Company, LLC

Dated:

By: /s/ John Siami________________________
Name: John Siami
Title: Manager

# EXHIBIT A

# LIQUIDATION ANALYSIS

11/26/2024 Liquidation Analysis

| **Current Assets:** | **Forced Liquidation Value** | **Orderly Liquidation Value** | **Fair Market Value** |
|---|---|---|---|
| Bank Accounts | $101,039.57 | $101,039.57 | $101,039.57 |
| Accounts Receivable | $163,268.00 | $163,268.00 | $163,268.00 |
| Inventory | $0.00 | $0.00 | $178,259.00 |
| Other Current Assets | | | |
| **Total Current Assets** | **$264,307.57** | **$264,307.57** | **$442,566.57** |
| Fixed Assets | $1,282,500 | $1,557,750 | $1,872,500 |
| Auction Costs (15%) | ($192,375) | ($233,663) | ($280,875) |
| **Total Assets** | **$1,354,433** | **$1,588,395** | **$2,034,192** |
| Choice Secured | ($1,050,000) | | |
| **Funds Available for Unsecured Creditors upon Liquidation** | **$304,433** | | |

# EXHIBIT B

# FINANCIAL PROJECTIONS

| | 2025<br>1 | 2025<br>2 |
|---|---|---|
| | **Jan-25** | **Feb-25** |
| **Total Monthly Sales Forecast** | **$173,900** | **$285,178** |
| *% Growth y/y* | *-37%* | *3%* |
| | | |
| (+) Collections of Current Open A/R | $186,394 | $158,718 |
| (+) Add'l A/R Collections (Backlog) | $0 | $0 |
| (+) Add'l A/R Collections (Swiss Production Customer) | $0 | $0 |
| (-) Forecasted Direct Costs (excl. Labor, Rent) | ($37,034) | ($53,099) |
| (-) Payments of Post-Petition Direct Costs (excl. Labor, Rent) | $0 | ($195) |
| (-) Current Payroll | ($125,515) | ($134,829) |
| (-) Rent | $0 | ($58,825) |
| (-) General Liability Insurance | ($5,339) | ($8,320) |
| (-) Energy Bill | ($2,682) | ($3,176) |
| (-) UPS | ($1,167) | ($1,457) |
| (-) Waste | $0 | ($312) |
| (-) Other Utilities | ($918) | ($718) |
| (-) Professional Fees | $0 | $0 |
| (-) MX 330 Lease | $0 | $0 |
| (-) Outstanding Checks | $0 | $0 |
| | | |
| (+/-) Changes to Current Payroll | $0 | $0 |
| +/- Other | ($1,248) | ($891) |
| (-) Software Renewals | $0 | $0 |
| (-) Fulcrum Payments | $0 | $0 |
| (+) CapEx (Maintenance and Growth) | $0 | $0 |
| (+) Insider Equity / Debt Injection | $0 | $63,779 |
| **Cash Flow Before Repayments** | **$12,491** | **($39,323)** |
| | | |
| **Repayments Due to Pre-Petition Creditors:** | | |
| (-) Payments of Pre-Petition Rent + Landlord Legal Fees | $0 | $0 |
| (-) Pre-Petition Unsecured Claims Payments (semi-annual) | $0 | $0 |
| (-) Pre-Petition Secured Claims Payments (quarterly) | $0 | $0 |
| **Total Post-Petition Repayments** | **$0** | **$0** |
| | | |
| **Beginning Cash Balance** | **$58,584** | **$71,074** |
| Cash Flow, Net of Repayments | $12,491 | ($39,323) |
| **Ending Cash Balance** | **$71,074** | **$31,751** |

Memo: Prior Year Comparisons

| | **Jan-24** | **Feb-24** |
|---|---|---|
| **2024 Sales** | $275,596 | $277,506 |
| *Sales Increase (decrease)* | *($101,696)* | *$7,672* |
| | | |
| **2024 Total Payroll Expense** | $166,617 | $160,070 |
| *Payroll Decrease (Increase)* | *$41,102* | *$25,242* |

| | | |
|---|---|---|
| | $173,900 | $285,178 |
| | ($101,696) | $7,672 |

| 2025<br>3 | 2025<br>4 | 2025<br>5 | 2025<br>6 | 2025<br>7 | 2025<br>8 | 2025<br>9 |
|---|---|---|---|---|---|---|
| **Mar-25** | **Apr-25** | **May-25** | **Jun-25** | **Jul-25** | **Aug-25** | **Sep-25** |
| **$331,930** | **$346,759** | **$293,504** | **$281,099** | **$356,023** | **$230,192** | **$227,611** |
| *-2%* | *-6%* | *47%* | *7%* | *124%* | *11%* | *-21%* |
| | | | | | | |
| $263,105 | $302,658 | $188,521 | $263,707 | $336,095 | $204,237 | $416,163 |
| $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| ($79,932) | ($59,828) | ($29,046) | ($50,599) | ($78,640) | ($35,943) | ($47,335) |
| $0 | $0 | $0 | $0 | $0 | $0 | ($54,592) |
| ($193,851) | ($116,068) | ($116,253) | ($134,886) | ($135,508) | ($125,993) | ($185,573) |
| ($18,712) | ($18,712) | ($18,712) | ($18,712) | ($18,712) | ($18,712) | ($18,712) |
| ($8,320) | ($8,320) | ($8,320) | ($8,320) | ($8,320) | $0 | $0 |
| ($5,730) | ($4,128) | ($3,858) | ($4,087) | ($4,993) | ($5,714) | ($5,705) |
| ($2,786) | ($2,963) | ($1,638) | ($2,769) | ($1,828) | ($1,994) | ($1,295) |
| ($312) | ($312) | ($312) | ($312) | ($312) | ($312) | ($371) |
| ($1,439) | ($1,007) | ($1,689) | ($895) | ($3,548) | ($1,034) | ($2,694) |
| $0 | ($13,280) | ($15,565) | ($20,000) | ($45,230) | ($803) | $0 |
| $0 | ($2,500) | $0 | $0 | $0 | ($5,000) | $0 |
| $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | |
| $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| ($580) | ($1,541) | ($316) | ($879) | ($125) | ($503) | $0 |
| $0 | ($67) | ($11,665) | ($67) | ($186) | ($2,232) | ($84) |
| $0 | $0 | ($5,250) | $0 | $0 | $0 | ($5,250) |
| $0 | $0 | ($2,995) | ($12,120) | ($2,383) | ($11,403) | $0 |
| $36,221 | $0 | $0 | $0 | $0 | $0 | $0 |
| **($12,337)** | **$73,931** | **($27,097)** | **$10,061** | **$36,309** | **($5,405)** | **$94,552** |
| | | | | | | |
| $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **$0** | **$0** | **$0** | **$0** | **$0** | **$0** | **$0** |
| | | | | | | |
| **$31,751** | **$19,413** | **$93,344** | **$66,247** | **$76,308** | **$112,617** | **$107,212** |
| ($12,337) | $73,931 | ($27,097) | $10,061 | $36,309 | ($5,405) | $94,552 |
| **$19,413** | **$93,344** | **$66,247** | **$76,308** | **$112,617** | **$107,212** | **$201,763** |
| | | | | | | |
| **Mar-24** | **Apr-24** | **May-24** | **Jun-24** | **Jul-24** | **Aug-24** | **Sep-24** |
| $339,231 | $366,964 | $199,059 | $261,660 | $159,055 | $207,764 | $288,056 |
| *($7,301)* | *($20,205)* | *$94,445* | *$19,439* | *$196,967* | *$22,428* | *($60,445)* |
| | | | | | | |
| $166,925 | $164,242 | $233,634 | $154,569 | $144,553 | $144,146 | $203,157 |
| *($26,927)* | *$48,174* | *$117,381* | *$19,683* | *$9,045* | *$18,153* | *$17,583* |
| | | | | | | |
| $331,930 | $346,759 | $293,504 | $281,099 | $356,023 | $230,192 | |
| ($7,301) | ($20,205) | $94,445 | $19,439 | $196,967 | $22,428 | |

| | 2025 10 | 2025 11 | 2025 12 | | | |
|---|---|---|---|---|---|---|
| | **Oct-25** | **Nov-25** | **Dec-25** | **2025** | **2026** | **2027** |
| | **$308,022** | **$271,851** | **$228,797** | **$3,208,864** | **$3,305,130** | **$3,396,021** |
| | *27%* | *45%* | *50%* | *9%* | *3.0%* | *2.8%* |
| | | | | | | |
| | $117,276 | $49,604 | $0 | $2,486,478 | $0 | $0 |
| | $72,545 | $215,880 | $213,393 | $501,819 | $3,305,130 | $3,396,021 |
| | $0 | $57,271 | $87,371 | $144,642 | $0 | $0 |
| | ($40,000) | ($40,000) | ($50,000) | ($601,456) | ($600,000) | ($616,500) |
| | ($30,737) | $0 | $0 | ($85,524) | $0 | $0 |
| | ($134,000) | ($134,000) | ($134,000) | ($1,670,476) | ($1,553,240) | ($1,599,837) |
| | ($18,712) | ($18,712) | ($18,712) | ($245,946) | ($229,034) | ($233,614) |
| | $0 | ($8,320) | ($8,320) | ($71,898) | ($74,055) | ($76,092) |
| | ($5,000) | ($5,000) | ($5,000) | ($55,074) | ($56,726) | ($58,286) |
| | ($2,000) | ($2,000) | ($2,500) | ($24,396) | ($25,128) | ($25,819) |
| | $0 | ($315) | $0 | ($2,870) | ($2,956) | ($3,038) |
| | ($4,000) | ($4,000) | ($5,000) | ($26,942) | ($27,751) | ($28,514) |
| | ($10,000) | ($10,000) | ($20,000) | ($134,878) | $0 | $0 |
| | ($5,000) | ($5,000) | ($5,000) | ($22,500) | ($90,000) | ($120,000) |
| | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | |
| | ($8,481) | ($8,481) | ($8,481) | ($25,442) | ($310,050) | ($319,352) |
| | $0 | $0 | $0 | ($6,084) | ($10,000) | ($10,000) |
| | ($20,000) | $0 | ($9,500) | ($43,801) | ($45,000) | ($45,450) |
| | ($5,250) | $0 | ($5,250) | ($21,000) | ($21,000) | ($21,000) |
| | $0 | $0 | $0 | ($28,901) | ($30,000) | ($30,000) |
| | $0 | $0 | $0 | $100,000 | $0 | $0 |
| | **($93,359)** | **$86,927** | **$29,002** | **$165,750** | **$230,190** | **$208,519** |
| | | | | | | |
| | $0 | ($73,235) | $0 | ($73,235) | $0 | $0 |
| | $0 | ($40,000) | $0 | ($40,000) | ($80,000) | ($80,000) |
| | $0 | $0 | ($33,517) | ($33,517) | ($134,070) | ($134,070) |
| | **$0** | **($113,235)** | **($33,517)** | **($146,752)** | **($214,070)** | **($214,070)** |
| | | | | | | |
| | **$201,763** | **$108,404** | **$82,097** | **$58,584** | **$77,582** | **$93,701** |
| | ($93,359) | ($26,307) | ($4,515) | $18,998 | $16,120 | ($5,551) |
| | **$108,404** | **$82,097** | **$77,582** | **$77,582** | **$93,701** | **$88,151** |

| | **Oct-24** | **Nov-24** | **Dec-24** | |
|---|---|---|---|---|
| | $242,579 | $187,316 | $152,181 | $2,956,966 |
| | *$65,442* | *$84,536* | *$76,615* | $377,897 |
| | | | | |
| | $115,574 | $112,777 | $113,280 | $1,879,542 |
| | *($18,426)* | *($21,223)* | *($20,720)* | *$209,067* |

| 2028 | 2029 | 2030 | 5-Year Total |
|---|---|---|---|
| **$3,480,921** | **$3,559,242** | **$3,612,630** | **$20,562,807** |
| *2.5%* | *2.3%* | *1.5%* | |
| | | | |
| $0 | $0 | $0 | $2,486,478 |
| $3,480,921 | $3,559,242 | $3,612,630 | $17,855,762 |
| $0 | $0 | $0 | $144,642 |
| ($631,913) | ($646,131) | ($655,822) | ($3,751,821) |
| $0 | $0 | $0 | ($85,524) |
| ($1,647,832) | ($1,697,267) | ($1,748,185) | ($9,916,838) |
| ($238,287) | ($243,052) | ($247,913) | ($1,437,847) |
| ($77,994) | ($79,749) | ($80,945) | ($460,733) |
| ($59,743) | ($61,088) | ($62,004) | ($352,922) |
| ($26,464) | ($27,060) | ($27,466) | ($156,332) |
| ($3,114) | ($3,184) | ($3,231) | ($18,393) |
| ($29,227) | ($29,884) | ($30,332) | ($172,650) |
| $0 | $0 | $0 | ($134,878) |
| ($120,000) | ($120,000) | ($120,000) | ($592,500) |
| $0 | $0 | $0 | $0 |
| | | | |
| ($328,932) | ($338,800) | ($348,964) | ($1,671,540) |
| ($10,000) | ($10,000) | ($10,000) | ($56,084) |
| ($45,905) | ($46,364) | ($46,827) | ($273,346) |
| ($21,000) | ($21,000) | ($21,000) | ($126,000) |
| ($30,000) | ($30,000) | ($30,000) | $0 |
| $0 | $0 | $0 | $0 |
| **$210,511** | **$205,664** | **$179,939** | **$1,279,475** |
| | | | |
| $0 | $0 | $0 | ($73,235) |
| ($80,000) | ($80,000) | ($80,000) | ($440,000) |
| ($134,070) | ($134,070) | ($100,552) | ($670,350) |
| **($214,070)** | **($214,070)** | **($180,552)** | **($1,183,584)** |
| | | | |
| **$88,151** | **$84,592** | **$76,186** | **$58,584** |
| ($3,559) | ($8,406) | ($613) | $16,989 |
| **$84,592** | **$76,186** | **$75,573** | **$75,573** |

**EXHIBIT C**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED**

| Contract | Counter-Party | Cure Amount | Date of Payment |
|---|---|---|---|
| Real Property Lease | UMA Properties, LLC | $73,234.54 | Thirty (30) days after the Effective Date |
| Matsuura MX-330 Lease | Williams Equipment Fund LLC | $22,500.00 | Twelve (12) equal monthly installments starting on the last day of the month after the Effective Date |
| Photocopier Lease | U.S. Bank Marshall Equipment Finance | $958.47 | Thirty (30) days after the Effective Date |

# EXHIBIT D

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

None

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **In Re:** | ) | Chapter 11, Sub V |
| **UMAPM HOLDING COMPANY, LLC,** | ) | Case No. 24-43262 |
| **Debtor.** | ) | |

# MODIFIED CHAPTER 11 PLAN OF REORGANIZATION FOR SMALL BUSINESS DEBTOR UNDER SUBCHAPTER V[1]

Karl J. Johnson (#0391211)
MJB Law Firm, PLLC
3701 Shoreline Drive, STE 200A
Wayzata, MN 55391
612-961-0145
karl@mjblawmn.com

*Counsel to the Debtor-in-Possession*

Dated: September 30, 2025

[1] Pursuant to Bankruptcy Rule 3016(d), this Plan conforms substantially with Official Form 425A (Plan of Reorganization for small Business Under Chapter 11).

## TABLE OF CONTENTS


Article I. Disclosures .....5

A. Brief History of the Business Operations. .....5

B. Events Leading to Bankruptcy Filing. .....5

C. The Debtor's Assets and Liabilities. .....7

D. Plan Summary. .....9

E. Liquidation Analysis. .....9

F. Projections and Plan Feasibility. .....10

Article II. Classification of Claims and Interests .....10

Article III. Treatment of Non-Classified Claims .....11

A. Administrative Claims. .....11

B. Administrative Claims under Section 507(a)(2) of the Bankruptcy Code. .....12

C. Professional Fee Claims. .....12

D. Priority Tax Claims. .....12

Article IV. Treatment of Claims and Interests under Plan .....13~~12~~

A. Treatment of Claims and Interests. .....13~~12~~

B. Special Provision Governing Unimpaired Claims .....16

C. Confirmation Pursuant to section 1191(b) of the Bankruptcy Code .....16

D. Controversy Concerning Impairment .....16

Article V. Allowance and Disallowance of Claims .....16

A. Disputed Claims Process. .....16

B. Prosecution of Objections to Claims. .....17

C. Settlement of Disputed Claims. .....17

D. No Interest; Non-Compensatory Damages. .....17

Article VI. Executory Contracts and Unexpired Leases .....17

A. Assumption of Executory Contracts and Unexpired Leases....17

B. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases....18

C. Objections to Assumption of Executory Contracts and Unexpired Leases....19

D. Claims for Rejection Damages....19

E. Insurance Policies....19

F. Reservation of Rights....19

Article VII. Means for Implementation of the Plan....2019

A. Global Settlement of Claims and Interests....2019

B. Confirmation of the Plan under Section 1191(b)....20

C. Vesting of Assets in the Debtor....20

D. Management of the Business....20

E. Sources of Consideration for Plan Distributions....21

F. Disputed Claims Reserve....21

G. Delivery of Distributions....21

H. Claims Paid or Payable by Third Parties....23

I. Modification of the Plan....24

J. Default under the Plan; Appropriate Remedies....24

K. Termination of Subchapter V Trustee Service....25

L. Case Closure....25

Article VIII. Discharge of Claims and Release....25

A. Discharge....25

B. Release....26

C. Exculpation....26

D. Injunction....2726

Article IX. General Provisions....27

A. Defined Terms. ....27

B. Rules of Interpretation. ....3332

C. Computation of Time. ....33

Article X. Other Provisions. ....33

A. Confirmation Hearing and Objection Deadline. ....33

B. Acceptance and Rejection of Plan. ....33

C. Nonconsensual Confirmation. ....3433

D. Immediate Binding Effect. ....34

E. Retention of Jurisdiction. ....34

F. Entire Agreement and Non-severability. ....3534

G. Effect of Non-occurrence of Effective Date. ....35

H. Governing Law. ....35

I. Tax Consequences. ....35

J. Reservation of Rights. ....3635

K. Waiver or Estoppel. ....36

L. Successors and Assigns. ....36

## ARTICLE I.
## DISCLOSURES

The Debtor proposes this Plan for the resolution of the outstanding Claims against the Debtor pursuant to Subchapter V of chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article IX of this Plan. The following disclosures are provided pursuant to section 1190(1) of the Bankruptcy Code.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests**. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Notice deadlines Plan voting and objection will be announced separately.**

*A. Brief History of the Business Operations.*

The company now known as UMAPM Holding Company, LLC d/b/a UMA Precision Machining ("UMA"), was established in 2000 and has grown from the founder's garage to working out of a 25,000 square foot state-of-the-art facility with more than a dozen employees, several with over 15 years' tenure. The Company's strategy is centered-on a highly-skilled engineering team and a culture for problem-solving and stepping up to challenging projects. The company has a strong reputation amongst medical device OEMs for handling challenging components that require significant upfront engineering and programming time. It has seen strong customer demand in 2024 and expects that trend to continue.

UMA is a contract manufacturer of medical devices located in Zimmerman, Minnesota. UMA provides prototyping and production manufacturing services to over 30 active customers in the medical device, medical instrumentation, and industrial instrumentation industries. UMA specializes in precision machining of highly complex components with tight tolerance requirements and leverages advanced capabilities including Swiss turning, 5-axis machining and wire EDM.

*B. Events Leading to Bankruptcy Filing.*

UMA invested heavily in quality and inspection and production staff during the period from 2019 through 2021. Due to these efforts, revenue increased from **$3.5M** in 2019 to **$4.7M** in 2021. Unfortunately, one of UMA's biggest customer's product families then moved close to a million dollars of annual volume to a lower cost manufacturer in Mexico. Another large customer's orthopedic implant failed to grow orders as projected. The higher costs remained through 2024 when revenue dropped to **$3.0M**. The following chart shows UMA's total revenue with a breakdown between those two customers and all other customers.




While the largest production customers shrank, the company maintains a stable base of more diversified medical device machining work. The two projects in 2021 represented 43% of total revenue. Today, over 80% of the company's revenue comes from medical device customers, with one product family representing 20% of revenue. Outside of this 20% project, the rest of the company's revenues are well diversified with no product family representing more than 5% of revenue.

In August 2024 the company executed a reduction in force and substantially reduced costs. At current expense levels, the company projects a profit if it generates $3.0M of revenue annually. September and October 2024 financials reflect this improved profitability.

The Debtor made significant investments into capital equipment in recent years, including 3 high-end swiss machines, an ultra-sonic cleaning system, a palletized 5-axis mill and a high-end CMM for part inspection. As a result, UMA has ample machine capacity to grow revenue and profits with minimal capital investment required.

Facing financial distress, the Debtor entered into a forbearance agreement with Choice Financial Group ("Choice") on September 3, 2024. Subsequently, the Debtor fell behind on rent payments to its landlord and an eviction hearing was scheduled for December 4, 2024.

In early November 2024, the Debtor negotiated a sale of the company on a price that was acceptable to Choice. This sale fell through because the landlord insisted that all lease arrears be cured immediately upon the closing of the sale. The Debtor filed a voluntary petition under Chapter 11 of Title 11 (the "Bankruptcy Code") on November 26, 2024 (the "Petition Date").

C. *The Debtor's Assets and Liabilities.*

1. Assets

As of the Petition Date, the Debtor had assets with an estimated book value of $2,624,367.38 and a forced liquidation value of $1,282,500.00. The Debtor's assets included $93,661.11 on deposit at Entre Bank and $1,685.00 on deposit at Choice. In addition, the Debtor had accounts receivable in the estimated amount of $288,513.27 as of the Petition Date, but $100,000.00 of the accounts receivable turned out to be unrecoverable. The Debtor had raw materials, work-in-progress, and finished goods inventory in the approximate amount of $178,258.00 as of the Petition Date, but the Debtor believes this raw materials, work-in-progress, and finished goods inventory had no resale value as of the Petition Date.

The Debtor has possession of two pieces of equipment under equipment leases: (1) a Matsuura MX-330 5-Axis Vertical Machining Center under a lease with Williams Equipment Fund LLC; and (2) a Ricoh C2004 EX Copier under a lease with U.S. Bank Marshall Equipment Finance (collectively, the "Leased Equipment"). Excluding the Leased Equipment, as of the Petition Date, the Debtor had CNC machines, milling machines, inspection equipment, and other equipment with an appraised fair market value of $1,872,500.00; an appraised Orderly Liquidation Value of $1,557,750.00;and a Forced Liquidation Value of $1,282,500.00 as of the Petition Date. Because an auction typically involves a commission of at least 15%, the Debtor expects that the equipment would yield net sale proceeds of no more than $1,090,125.

The Debtor believes that the Forced Liquidation Value of all its assets as of the Petition Date was:

| | |
|---|---:|
| FLV Equipment net of auction commissions | $1,090,125.00 |
| Entre Bank Deposit | $93,661.11 |
| Choice Bank Deposit | $1,685.00 |
| Accounts Receivable | $188,513.27 |
| Raw Materials, WIP, finished Goods | $0 |
| **Total** | **$1,373,984.38** |

The first $1,050,000.00 of that amount belongs to Choice Bank on account of its secured claim. A more detailed liquidation analysis is discussed in Section I.E. below.

2. Liabilities

As of the Petition Date, the Debtor had aggregate liabilities in the estimated amount of $2,874,767.95, excluding debt owed to an insider.

a. Secured Claim

The only secured creditor is Choice, which holds a claim in the amount of approximately $2,691,023.90. The liabilities owed to Choice arise from a loan that was extended in early 2020. Choice attempted to perfect its security interests by filing a UCC-1 financing statement with the Secretary of State of Minnesota as filing number 1144696500020 on February 26, 2020 (the "Minnesota UCC") and asserted a blanket security interest in all assets.

Because the Debtor is a Delaware limited liability company, the Minnesota UCC was ineffective to perfect Choice's alleged liens. On September 17, 2024, two weeks after entering into the forbearance agreement with the debtor and 70 days before the Petition Date, Choice filed a UCC-1 financing statement with the Secretary of State of Delaware as filing number 2024 6416000 (the "Delaware UCC") and again asserted a blanket security interest in all assets. Because the Delaware UCC was filed within 90 days of the Petition Date and the Debtor was insolvent on the date the Delaware UCC was filed, it may be avoided as a preference under 11 U.S.C. § 547(b).

On March 28, 2025, the Debtor filed the complaint in Adversary Proceeding 25-04044 to avoid Choice's alleged liens. After mediation, the Debtor and Choice settled this adversary proceeding on the following terms: (1) Choice is granted an allowed secured claim in the amount of $1,050,000.00; (2) Choice's allowed secured claim will be amortized over 10 years with 5.00% interest, quarterly payments, and a balloon payment at the end of a 5-year subchapter V plan; (3) Choice's allowed secured claim, and the terms for repayment, will be documented in new loan documents that will include a requirement for monthly financial reporting; (4) the Debtor will be allowed to acquire and finance new equipment as long as there is no trade-in or other disposition of equipment subject to Choice's liens without Choice's prior written consent; (5) Choice will have an allowed unsecured claim for the remainder of Choice's claim and will receive all payments that would otherwise be payable to McChesney Holdings, Inc. based on the subordination agreement until Choice's claim is paid in full; (6) Choice will vote both its secured claim and its unsecured claim in favor of plan confirmation; and (7) the Debtor agrees to dismiss the adversary proceeding.

b. Priority Tax Claim

On February 12, 2025, the Minnesota Department of Revenue filed Proof of Claim No. 8 and asserted a priority tax claim in the amount of $100.00. On February 18, 2025, the Minnesota Department of Revenue withdrew Claim No. 8. The Debtor believes there are no priority tax claims.

c. General Unsecured Claims

In addition to the large unsecured claim held by Choice in the amount of $1,641,023.90, and excluding prepetition arrears owed to executory contract counterparties, the Debtor has general unsecured liabilities in an aggregate amount of approximately $1,195,263.07. These liabilities include an unsecured claim held by the U.S. Small Business Administration ("SBA") in the amount of $145,954.48 (POC #8); a claim owed to Productivity in the estimated amount of $69,716.39; a claim owed to WIPFLI LLP in the estimated amount of $33,510.74; a claim owed to JP Morgan Chase in the estimated amount of $21,970.87.00; a claim owed to McChesney Holdings, Inc. in the amount of $844,965.64 and various small claims owed to trade creditors. In the aggregate, there are estimated unsecured claims in the approximate amount of $2,836,286.97. Under the terms of a binding subordination agreement, any distributions owed on account of McChesney Holdings, Inc. on account of the $844,965.64 are to be paid directly to Choice until Choice's claim is paid in full. In the event that Choice is paid in full, any further distributions under this plan on account of McChesney Holdings, Inc.'s claim will be paid to McChesney Holdings, Inc.

*D. Plan Summary.*

1. *Claims and Interests.*

The Plan provides for the following Claims and Interests:

a. Administrative Claims.

b. Priority Tax Claims.

c. Other Priority Claims.

d. Secured Claim of Choice Financial Group.

e. Secured Claim of UMA Credit Group LLC.

f. Convenience Claims.

g. General Unsecured Claims.

h. Interests.

2. *Treatment of Claims and Interests.*

The Plan proposes to pay Allowed Administrative Claims and Priority Tax Claims in accordance with Article III. Holders of Claims in Classes 1, 2, and 3 should refer to Article III for information regarding the precise treatment of their Claim. Holders of Class 4 General Unsecured Claims will receive Pro Rata distributions, which the Debtor has valued as approximately 14 cents on the dollar. Holders of Interests shall retain their Interests in the Debtor.

The Plan Term is five years commencing on the Effective Date.

3. *Means of Implementation.*

The Debtor will satisfy Allowed Claims under the Plan with Cash in its possession, custody, or control on the Effective Date, Cash derived from its ongoing business operations, and Cash derived from its Projected Disposable Income during the term of the Plan.

*E. Liquidation Analysis.*

Often called the "best interests" test, sections 1129(a)(7) and 1190(1)(B) of the Bankruptcy Code require that a bankruptcy court find, as a condition to confirmation, that a 0~~Chapter 11~~ plan provides, with respect to each impaired class, that each Holder of a Claim or Interest in such impaired class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting Holder would receive or retain if the debtor liquidated under chapter 7.

Attached hereto as **Exhibit A** and incorporated herein by reference is a liquidation analysis (the "**Liquidation Analysis**") prepared by the Debtor. As reflected in the Liquidation Analysis,

the Debtor believes that liquidation of the Debtor's business under chapter 7 of the Bankruptcy Code would result in substantial diminution in the value to be realized by Holders of Claims or Interests as compared to distributions contemplated under the Plan. Consequently, the Debtor and its management believe the Confirmation of the Plan will provide a substantially greater return to Holders of Claims or Interests than would a liquidation under chapter 7 of the Bankruptcy Code.

*F. Projections and Plan Feasibility.*

Section 1190(1)(C) of the Bankruptcy Code requires a plan filed under Subchapter V of 0~~Chapter 11~~ to include projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization. In addition to this requirement, section 1129(a)(11) of the Bankruptcy Code requires the bankruptcy court to find that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor of the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization). If a class of claims or interests is impaired by the plan and does not accept the plan, section 1191(b) of the Bankruptcy Code requires the bankruptcy court to additionally find that the plan is fair and equitable, with respect to such class of claims or interests as a condition to plan confirmation. To conclude that the plan is fair and equitable to each nonconsenting impaired class, the bankruptcy court must find that: (1) with respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code; (2) as of the effective date of the plan, all of the projected disposable income of the debtor to be received during the plan term, or its equivalent value, will be applied to make payments under the plan; and (3)(i) the debtor will be able to make all payments under the plan, or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan. See 11 U.S.C. § 1191(c).

To comply with section 1190(1)(C) and determine whether the Plan meets the forgoing feasibility requirements, the Debtor has analyzed its ability to meet its obligations under the Plan. As part of this analysis, the Debtor has prepared its financial projections (the "**Financial Projections**") attached hereto as **Exhibit B** and incorporated herein by reference. Based on the Financial Projections, the Debtor believes that it will be a viable operation following the Bankruptcy Case and that the Plan will meet the feasibility requirements of the Bankruptcy Code.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Except for the Claims addressed in Article III of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that

such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Interests in the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Choice Financial Group | Impaired | Entitled to Vote |
| Class 2 | UMA Credit Group LLC | Impaired | Entitled to Vote |
| Class 3 | Convenience Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## ARTICLE III.
## TREATMENT OF NON-CLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article II.

*A. Administrative Claims.*

Subject to section B of this Article, and unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

*B. Administrative Claims under Section 507(a)(2) of the Bankruptcy Code.*

Pursuant to section 1191(e) of the Bankruptcy Code, each Holder of an Allowed Administrative Claim arising under section 507(a)(2) of the Bankruptcy Code will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter, and ending not later than August 30, 2025; provided, however, that nothing in this section shall prohibit the Debtor from satisfying such Allowed Administrative Claim earlier than August 30, 2025 through one or more Cash payments.]

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Confirmation Date.

*C. Professional Fee Claims.*

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Professional Fee Claims must be filed no later than thirty (30) days after the Confirmation Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, or order of the Bankruptcy Court. The Debtor shall pay Professional Fee Claims in Cash in the amount allowed by the Bankruptcy Court within five (5) Business Days of allowance. So long as the estate exists post-confirmation, any post-confirmation fees of the Subchapter V Trustee and any professionals hired by the Subchapter V Trustee (if any) shall be subject to approval by the Court pursuant to 11 U.S.C. § 503(b). Upon Court approval of any such post-confirmation administrative expenses, the Debtors will pay such approved administrative expense in the ordinary course of business, unless otherwise agreed to by the particular claimant.

*D. Priority Tax Claims.*

To the extent not previously paid during the Bankruptcy Case, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Priority Tax Claim, payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) the date such Priority Tax Claim becomes due and Allowed or as otherwise Allowed by the Bankruptcy Court and ending not later than five (3) years from the Petition Date; provided, however, that nothing in this section shall prohibit the Debtor from satisfying such Allowed Priority Tax Claim earlier than five (3) years from the Petition Date through one or more Cash payments. Until satisfied, an Allowed Priority Tax Claim shall accrue interest no earlier than the Effective Date and at the non-default rate determined under applicable non-bankruptcy law pursuant to § 511(b) of the Bankruptcy Code.

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

*A. Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1. <u>*Class 1 – Choice Financial Group*</u>

   a. *Classification*: Class 1 consists of the Claim of Choice.

   b. *Allowance*: On the Effective Date, the Claim of Choice shall be bifurcated pursuant to section 506(a)(1) of the Bankruptcy Code, and Choice shall have an Allowed Secured Claim in the amount of $1,050,000.00 and an Allowed General Unsecured Claim in the amount of $1,641,023.90.

   c. *Treatment*: Choice shall receive, in satisfaction of its Allowed Secured Claim, quarterly payments based on a ten year amortization at 5.00% interest with a balloon payment due at the conclusion of the Debtor's five-year subchapter V plan. The Allowed General Unsecured Claim of Choice shall be treated as a Class 3 Claim, unless Choice elects on its Ballot to have its General Unsecured Claim allowed in an amount no greater than $10,000.00, in which case the Claim will be treated as a Class 2 Convenience Claim. Notwithstanding the foregoing, Choice may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

   d. *Lien Retention*: Choice shall retain its existing Lien on its collateral until the payment in full of its Allowed Secured Claim. Upon the satisfaction of the Allowed Secured Claim, (i) all credit agreements, notes, mortgages, security agreements, invoices, contracts, agreements, and any other documents, instruments and judgments evidencing the Class 1 Claim, together with any and all Liens securing the same, shall be canceled, discharged and released without further act or action by Choice under any applicable agreement, law, regulation, order or rule; (ii) the obligations of the Debtor thereunder shall be deemed cancelled, discharged, and released; and (iii) all of the right, title and interest of Choice under any Liens, security interests or judgments, including any rights to any collateral thereunder, will revert to the Debtor. The Debtor may file a UCC-5 financing statement to reflect the satisfaction of the Class 1 Claim.

e. *Voting*: Class 1 is impaired under the Plan and Choice is entitled to vote to accept or reject the Plan.

2. <u>*Class 2—DIP Loan*</u>

a. *Classification*: Class 2 consists of the secured claim held by UMA Credit Group LLC (the "DIP Lender") in the amount of $100,000.00 plus accrued interest.

b. *Treatment*: The DIP Lender shall receive, in full and final satisfaction of such Claim, sixty (60) newly issued Class A Units in UMAPM Holding Company, LLC. This conversion of the DIP Lender's claim to equity is exempt from securities laws pursuant to 11 U.S.C. § 1145. After the conversion, there will be a total of one hundred sixty (160) outstanding Class A Units. The sixty (60) units will represent approximately 37.5% of the equity in the Debtor.

3. <u>*Class 3 – Convenience Claims*</u>

a. *Classification*: Class 3 consists of General Unsecured Claims (i) that are Allowed in an amount equal to or less than $10,000.00 or (ii) in an amount greater than $10,000.00, but which the Holder thereof elects on its Ballot to be Allowed in an amount no greater than $10,000.00 and to be treated as a Convenience Claim.

b. *Allowance*: As of the date of this Plan, there are approximately 45 Convenience Claims, with aggregate Allowed claims in the amount of approximately $79,234.40.

c. *Treatment*: Each Holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of Cash equal to $20,000.00 on the later of (i) ninety (90) days after the Effective Date; or (ii) when such Claim, or any portion of such Claim, becomes due and payable under the parties' contract or applicable law. Based on the estimates in subsection b above, this is a distribution of approximately 25%.

d. In lieu of receiving the treatment provided in Class 3, any Holder of a Convenience Claim may elect on its Ballot to have its Claim treated as a General Unsecured Claim in Class 4.

e. *Voting*: Class 3 is impaired under the Plan and Holders of Convenience Claims shall be entitled to vote to accept or reject the Plan.

4. <u>*Class 4 – General Unsecured Claims*</u>

a. *Classification*: Class 4 consists of Holders of General Unsecured Claims, including the Allowed General Unsecured Claims of Choice.

b. *Treatment*: On the Effective Date, each Holder of a General Unsecured Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim's Pro Rata share of Projected Disposable Income in the aggregate amount of $400,000.00, which should result in a recovery of approximately 14% of the Allowed amount of a Holder's General Unsecured Claim, according to the Financial Projections set forth on Exhibit B. Commencing on the Effective Date and concluding no later than the fifth anniversary of the Effective Date, the Debtor shall distribute the Cash to each Holder semi-annually; provided, however, that distributions owed on account of the claim of McChesney Holdings, Inc. will be paid directly to Choice pursuant to a binding subordination agreement. Notwithstanding the foregoing, a Holder may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor. Payments on account of General Unsecured claims are anticipated to be paid as follows:

| | |
|---|---:|
| November 30, 2025 | $40,000.00 |
| May 30, 2026 | $40,000.00 |
| November 30, 2026 | $40,000.00 |
| May 30, 2027 | $40,000.00 |
| November 30, 2027 | $40,000.00 |
| May 30, 2028 | $40,000.00 |
| November 30, 2028 | $40,000.00 |
| May 30, 2029 | $40,000.00 |
| November 30, 2029 | $40,000.00 |
| May 30, 2030 | $40,000.00 |
| Total | $400,000.00 |

c. *Compliance with Section 1191(b)*: If Class 4 votes to reject the Plan, Holders of Class 4 Allowed General Unsecured Claims shall receive the treatment set forth above and shall additionally be entitled to exercise the remedies set forth in Article VII.J. The Debtor submits that such treatment satisfies the requirements of section 1191(b).

d. *Class 3 Election*: In lieu of receiving the treatment provided in Class 4, any Holder of a General Unsecured Claim may elect on its Ballot to have its

Claim treated as a Convenience Claim in Class 3 in an amount up to $10,000.00.

e. *Voting*: Class 4 is Impaired under the Plan and Holders of General Unsecured Claims shall be entitled to vote to accept or reject the Plan.

5. *Class 5 – Interests*

a. *Classification*: Class 5 consists of Holders of Interests in the Debtor.

b. *Treatment*: On the Effective Date, each Holder shall retain their Interests in the Debtor in the same number of Class A Units that existed on the Petition Date, except as diluted by the conversion of the DIP Loan to equity.

c. *Voting:* Class 5 is Unimpaired under the Plan. The Holders of Interests in Class 5 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders are not entitled to vote to accept or reject the Plan.

*B. Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

*C. Confirmation Pursuant to section 1191(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.A of the Plan. The Debtor shall seek Confirmation of the Plan pursuant to section 1191(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*D. Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE V.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

*A. Disputed Claims Process.*

Except as otherwise provided herein, if a party files a Proof of Claim and the Debtor has not determined, without the need for notice to, or action, order or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be deemed Disputed unless and until Allowed, resolved by agreement of the parties, or disallowed by a Final Order. Only the claims of Choice, the DIP Lender, and the SBA are being Allowed by operation of the Plan.

Except as otherwise provided herein, all Proofs of Claim filed after the Proof of Claim Bar Date or Governmental Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, without the need for any objection by the Debtor or the Subchapter V Trustee, or any further notice to, or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, on and after the Effective Date, the Debtor may negotiate and settle any Claims, including Claims for which a Proof of Claim has been filed, without further notice to or approval of the Bankruptcy Court or any other party.

*B. Prosecution of Objections to Claims.*

Any objections to Claims or Interests, other than Claims of a Governmental Unit, shall be served and filed on or before the 30th day after the Effective Date or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Holder (the "**Claims Objection Deadline**"). Any objections to Claims of a Governmental Unit, shall be served and filed on or before the 30th day after the deadline for Governmental Units to file Proofs of Claim pursuant to Bankruptcy Rule 3002(c)(1) or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Governmental Unit (the "**Governmental Claims Objection Deadline**"). All Claims and Interests that the Debtor or Subchapter V Trustee have not objected to by the Claims Objection Deadline or Governmental Claims Objection Deadline, as applicable, shall be deemed Allowed.

*C. Settlement of Disputed Claims.*

The Debtor or the Subchapter V Trustee, as applicable, shall have the power and authority to settle and compromise a Disputed Claim subject to compliance with Bankruptcy Rule 9019 and approval by the Bankruptcy Court.

*D. No Interest; Non-Compensatory Damages.*

Unless otherwise specifically provided for in the Plan or by Final Order, post-petition interest or penalty shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest or penalty accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest or penalty shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption of Executory Contracts and Unexpired Leases.*

The Confirmation Order will constitute an order of the Bankruptcy Court approving the following as of the Effective Date pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code: (i) the assumption of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit C** hereto; and (ii) the rejection of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit D**. Until the conclusion of the Confirmation Hearing, the Debtor shall have the right to remove any Executory Contracts or Unexpired Leases from **Exhibit C** and include such removed Executory Contracts or Unexpired Leases on **Exhibit D**.

Except as otherwise provided herein or agreed to by the Debtor with the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Bankruptcy Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

*B. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Debtor shall pay an amount sufficient to cure any default as is required under 11 U.S.C. § 365(b) (the "Cures"), if any, in the amounts and by the deadlines set forth on **Exhibit C**. Any contract that is not listed on **Exhibits C** or **D** shall be deemed assumed without the requirement of the Debtor to pay any Cure. If there is any dispute regarding any Cure, the ability of the Debtor to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, objection to the proposed assumption of the Executory Contract or Unexpired Lease, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption, or as may be agreed upon by the Debtor and the counterparty to the Executory Contract or Unexpired Lease.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor to a counterparty must be filed with the Bankruptcy Court on or before the Voting Deadline. Any such request, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor without the need for any objection by the Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor of the Cure; provided that nothing herein shall prevent the Debtor from paying Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Debtor may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article VI shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Bankruptcy Case, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article VI, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

*C. Objections to Assumption of Executory Contracts and Unexpired Leases.*

Any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, including any objection to the proposed Cure, must be filed with the Bankruptcy Court by the Voting Deadline. Any such objection, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of an Executory Contract or Unexpired Lease will be deemed to have consented to such assumption. The Debtor may settle any such objections without any further notice to, or action, order or approval of, the Bankruptcy Court.

*D. Claims for Rejection Damages*

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected, if any, shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date. Any rejection damages Claim represented by an untimely Proof of Claim shall: (i) be Disallowed without the need for any further notice to, or action, order, or approval of, the Bankruptcy Court; (ii) be forever barred, estopped, and enjoined from assertion; (iii) not be enforceable against the Debtor; and (iv) be deemed fully satisfied, released, and discharged notwithstanding anything in a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 6 Convenience Claims or Class 7 General Unsecured Claims, as applicable.

*E. Insurance Policies.*

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Debtor.

*F. Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have thirty (30) days following entry of a Final Order such dispute to alter its treatment of such contract or lease under the Plan.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A. Global Settlement of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, release, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. Subject to Article VII hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

*B. Confirmation of the Plan under Section 1191(b).*

The Debtor requests that the Bankruptcy Court confirm the Plan under section 1191(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

*C. Vesting of Assets in the Debtor.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in the Estate, Cause of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action that are not addressed in this Plan without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

*D. Management of the Business.*

Except as provided in any agreement approved by the Bankruptcy Court, John Siami shall operate and manage the business of the Debtor after the Effective Date. John Siami is an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code. In exchange for his services as Manager, John Siami will receive $180,000.00 in annual compensation from the Debtor payable biweekly in the amount of $6,923.08 and the same employee benefits that are available to other employees of the Debtor.

*E. Sources of Consideration for Plan Distributions.*

The Debtor shall use Cash on hand, working capital, and Cash from ongoing business operations to fund distributions to certain Holders of Allowed Claims, consistent with the terms of the Plan. Pursuant to section 1190(2) of the Bankruptcy Code, the Plan provides for the submission of all or such portion of the future earnings of the Debtor as is necessary for the execution of the Plan.

*F. Disputed Claims Reserve.*

The Debtor shall establish and maintain a reserve (the "**Disputed Claims Reserve**") equal to the aggregate amount that would have been distributed to Holders of Disputed Claims in connection with interim distributions.

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged.

*G. Delivery of Distributions.*

1. <u>Disbursing Agent.</u>

Notwithstanding sections 1191(b) and 1194 of the Bankruptcy Code, the Debtor and not the Subchapter V Trustee shall act as the Disbursing Agent under the Plan.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursements claim (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Debtor.

2. *Delivery of Distributions.*

Unless otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's record as of the date of any such distribution; *provided* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

3. *Time Bar to Negotiate Distribution Checks.*

Holders of Allowed Claims shall have ninety (90) days from the date of issuance of a distribution to negotiate a check issued by the Disbursing Agent. If a Holder fails to negotiate a disbursement check within ninety (90) days, the Disbursing Agent shall have the right to void the check, and any current and/or future claims of such Holder shall be treated as Unclaimed Distributions (defined below).

4. *Undeliverable Distributions.*

If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Debtor and the Disbursing Agent shall be authorized to treat such Holder's current and future distribution on account of its Allowed Claim as Unclaimed Distributions (defined below).

The Disbursing Agent shall have no obligation to make more than two (2) attempts to obtain the Holder's current address. Any distribution that remains undeliverable after six (6) months of the date the distribution was first attempted shall become an Unclaimed Distribution (defined below).

5. *Unclaimed Distributions; Reversion.*

Any distribution made by the Disbursing Agent to a Holder of an Allowed Claim that is undeliverable for more than six (6) months or has not been negotiated within ninety (90) days from the date of issuance of the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall revest with the Debtor. Upon such revesting, (i) the Claim of any

Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary, and (ii) such Holder shall not be entitled to receive any further distributions on account the Allowed Claim relating to such Unclaimed Distribution.

6. Subchapter V Trustee Disbursement to Holders of Class 4 Claims.

a. Notwithstanding Article VII.F of the Plan, in the event that the Bankruptcy Court does not authorize the Debtor to serve as the Disbursing Agent, the Subchapter V Trustee shall serve as Disbursing Agent with respect to Classes 3 and 4 under the supervision of the United States Trustee. Post-Confirmation Fees and Expenses of the Subchapter V Trustee. In addition to the right to receive payment for fees and expenses incurred as a Disbursing Agent set forth in Article VII.F, the Subchapter V Trustee shall be entitled to recoup reasonable fees and costs incurred in performing his obligations as Disbursing Agent under this paragraph from any Cash that he receives from the Debtor under the Plan. Contemporaneously with making a distribution to Holders in Class [--], the Subchapter V Trustee shall deliver a fee and expense statement to the Debtor, the Office of the United States Trustee, and Holders of Allowed Unsecured Claims in Class 4 (the "**Notice Parties**"). The Notice Parties shall have fourteen (14) days to submit to the Subchapter V Trustee a written objection to the requested fees and/or expenses. In the absence of a timely-served objection, the Subchapter V Trustee shall be authorized to draw on the funds in the Disbursement Account in satisfaction of his fees and expenses. If a party objects to the requested fees and/or expenses, the Subchapter V Trustee shall be authorized to resolve the objection with the consent of the objecting party and upon notice to the Notice Parties. If the parties are unable to reach a resolution to the objection, the Subchapter V Trustee may move to authorize and allow payment of the requested fees and expenses with the Bankruptcy Court.

*H. Claims Paid or Payable by Third Parties.*

1. Claims Paid by Third Parties.

The Debtor shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Disbursing Agent or the Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Disbursing Agent or the Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2. *Claims Payable by Third Parties.*

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (in and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. *Applicability of Insurance Policies.*

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provision of any applicable insurance policy. Notwithstanding anything to the contrary contained herein, nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers, under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

*I. Modification of the Plan.*

The Debtor may modify the Plan subject to the requirements and limitations of section 1193 of the Bankruptcy Code. Consistent with Article VII.B, the Debtor may modify the Plan to the extent that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

The Debtor may, without notice to Holders of Claims or Interests, insofar as it does not materially or adversely affect the interests of any such Holders, correct any defect or omission in the Plan and any schedule or exhibit to the Plan. Provided, however, that nothing in this Plan shall limit the rights of any Party in Interest to seek an adjudication of any modification from the Court.

*J. Default under the Plan; Appropriate Remedies.*

If the Plan has been confirmed under section 1191(a) of the Bankruptcy Code and the Debtor fails to timely perform its obligations under the Plan with respect to one or more Holders of Allowed Claims then, notwithstanding the injunction set forth in Article VIII.D, such Holders shall be entitled to pursue any rights and remedies that such Holders may have under applicable law, including but not limited to foreclosure of Liens, and bringing an action against the Debtor for breaching its obligations under the Plan and seeking monetary and/or injunctive relief; provided that the Debtor shall have ninety (90) days to cure any default with respect to its obligations to Class 4 before any Holders of Allowed Claims in such Class may be allow to pursue any rights or remedies that such Holders may have under applicable law.

In addition to the foregoing, if the Plan has been confirmed under section 1191(b) of the Bankruptcy Code, and the Debtor fails to timely perform its obligations under the Plan with respect

to one or more Impaired Classes that has not accepted the Plan, then: (i) the Debtor shall have ninety (90) days to cure any default with respect to such Impaired Classes; (ii) if the Debtor is unable to cure such default, it shall, no later than forty-five (45) days from the expiration of the time allotted in clause (i), file a modified plan supported by a revised projected disposable income analysis, which plan shall propose treatment of the Impaired Classes consistent with section 1191; and (iii) the Debtor shall move for the Bankruptcy Court to approve the Plan, as modified, after notice and a hearing. If the Debtor fails to comply with this paragraph after failing to perform its obligations under the Plan with respect to one of more Impaired Classes or fails to obtain a Final Order approving modifications to the Plan that are sufficient to ensure that Holders of Allowed Claims in each Impaired Class are not discriminated against unfairly and receive fair and equitable treatment, then any party in interest may move to convert the Bankruptcy Case to one under chapter 7, and the Debtor shall not oppose such motion.

*K. Termination of Subchapter V Trustee Service.*

If the Plan is confirmed pursuant to section 1191(a) of the Bankruptcy Code, the Subchapter V Trustee's service in the Bankruptcy Case shall terminate once the Plan has been substantially consummated (as defined by section 1101(2) of the Bankruptcy Code), or the Bankruptcy Case is dismissed or converted to another chapter of the Bankruptcy Code. No later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file and serve a notice of such substantial consummation pursuant to 1183(c)(2)~~, which shall be sufficient proof of the termination of the Subchapter V Trustee's services~~. The Subchapter V Trustee's services shall be terminated upon substantial consummation and the submission of the Subchapter V Trustee's final report pursuant to 11 U.S.C. Section 1183(b)(1) and Section 704(a)(9).

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Subchapter V Trustee's service in the Bankruptcy Case shall terminate upon the entry of a final decree closing the Bankruptcy Case, or upon the dismissal or conversion of the Bankruptcy Case to another chapter of the Bankruptcy Code.

*L. Case Closure.*

If the Plan is confirmed pursuant to section 1191(a), upon substantial consummation of the Plan, the Debtor shall file: (i) the notice required under section 1183(c)(2); and (ii) a motion for entry of final decree closing the Bankruptcy Case pursuant to Bankruptcy Rule 3022.

If the Plan is confirmed pursuant to section 1191(b), upon completion of all payments due under the Plan to Holders of Claims in Classes 4, the Debtor shall file a motion for entry of final decree closing the Bankruptcy Case pursuant to Bankruptcy Rule 3022. The Subchapter V Trustee's service shall terminate upon the entry of the final decree.

## ARTICLE VIII.
## DISCHARGE OF CLAIMS AND RELEASE

*A. Discharge.*

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of the Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code. The Debtor will not be discharged from any debt imposed by the Plan or to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to section 1141(d)(A) of the Bankruptcy Code and all Administrative Claims upon completion of all payments due during the Plan Term and the Bankruptcy Court's entry of an order of discharge pursuant to section 1192 of the Bankruptcy Code; *provided* that the order of discharge shall not apply to any debt for which the last payment is due after the Plan Term has completed.

*B. Release.*

Upon entry of the order of discharge, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan: (i) each Holder of a Claim that votes to accept the Plan; and (ii) to the fullest extent permissible under applicable law, each Entity that has held, holds, or may hold a Claim or at any time was a creditor of the Debtor and that does not vote on the Plan or votes to reject the Plan, in each case will be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, rights, Causes of Action, and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan that such Entity has, had or may have against the Debtor, the Estate, and the Debtor's assets.

*C. Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, filing, or termination of the Plan and related transactions, created or entered into since the Petition Date, the pursuit of Confirmation, the pursuit of Substantial Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that constitutes actual fraud, willful misconduct, or gross negligence, but in all respects such Entities may assert the affirmative defense that they reasonably relied upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*D. Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor or its property or assets on account of or in connection with or with respect to such Claims; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property or assets on account of or in connection with or with respect to such Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtoror its property or assets on account of or in connection with or with respect to such Claims unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date; and (5) commencing or continuing in any manner any actions or other proceeding of any kind on account of or in connection with or with respect to any such Claim released or settled pursuant to the Plan.

## ARTICLE IX.
## GENERAL PROVISIONS

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. **"Administrative Claim"** means a Claim for costs and expenses of administration of the Estate under section 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the business of the Debtor; and (b) Allowed Professional Fee Claims.

2. **"Allowed"** means, as to a Claim or Interest, proof of which was timely and properly filed or, if no proof of Claim or Interest was filed, which has been or hereafter is listed in the Schedules, as liquidated in an amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (b) an objection has been interposed and such Claim or Interest has been allowed, in whole or in part, by a Final Order and/or by the agreement of the holder of such Claim or Interest. With respect to an Administrative Claim, "Allowed" shall mean any Administrative Claim, or any portion thereof, with respect to which both (a) a timely and proper request for payment has been made to the extent required by the Plan,

the Confirmation Order, or by any other order of the Bankruptcy Court, and (b) such Administrative Claim is allowed by the Bankruptcy Court. Allowed Claims shall not include Disputed Claims or Disallowed Claims.

3. **"Ballot"** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject the Plan.

4. **"Bankruptcy Case"** means the Debtor's bankruptcy case pending in the Bankruptcy Court, Case No. 24-43262.

5. **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532.

6. **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Minnesota.

7. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated under section 2075 of title 28 of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court.

8. **"Proof of Claim Bar Date"** means April 8, 2025, the deadline for Holders of Claims (other than Governmental Units) to file a Proof of Claim against the Estate in the Bankruptcy Case.

9. **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

10. **"Cash"** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

11. **"Cause of Action"** means any action, claim, cross-claim, third-party claim, cause of action, chose in action, controversy, dispute, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foresee or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

12. **"Claim"** means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

13. **"Class"** means a class of Claims or Interests as set forth in Article II hereof pursuant to section 1122(a) of the Bankruptcy Code.

14. **"Confirmation"** means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Bankruptcy Case.

15. **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

16. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1191 of the Bankruptcy Code, as such hearing may be continued from time to time.

17. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1191 of the Bankruptcy Code, together with any supplementary exhibits, appendices, and related documents.

18. **"Convenience Claim"** means any General Unsecured Claim that is (i) Allowed in an amount equal to or less than $10,000 or (ii) in an amount that is greater than $10,000, but which the Holder thereof elects on its Ballot to be Allowed in an amount no greater than $10,000 and to be treated as a Convenience Claim in accordance with the Plan.

19. **"Cure"** means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's default under an Executory Contract or an Unexpired Lease assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

20. **"Debtor"** has the meaning set forth in the preamble to the Plan and shall include the reorganized Debtor after the Effective Date of the Plan, as applicable.

21. **"Disallowed"** means as to a Claim, or any portion thereof, that: (a) has been disallowed or expunged by a Final Order; (b) has been listed by the Debtor in the Schedules in the amount of "$0.00" or as unliquidated in amount, disputed, contingent, or unknown and for which no Proof of Claim has been filed prior to the applicable deadline; or (c) unless otherwise specified herein or by Final Order, any interest, fees, and charges, and any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or any other claims or obligations that do not compensate for actual losses.

22. **"Disbursing Agent"** means, as applicable, the Debtor or any Entity the Debtor selects to make or to facilitate distributions in accordance with the Plan.

23. **"Disposable Income"** shall have the meaning set forth in section 1191(d) of the Bankruptcy Code.

24. **"Disputed"** means as to a Claim, or any portion thereof, that: (a) is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order; (d) if held by an Entity that is a defendant in a pending Avoidance Action, or has failed to pay or turn over property as required by section 502(d) of the Bankruptcy Code; or (e) is otherwise disputed

by the Debtor or the Subchapter V Trustee after the Effective Date, in accordance with applicable law.

25. **"Exculpated Parties"** means, collectively, and in each case in its capacity as such: (i) the Debtor; (ii) the Subchapter V Trustee; and (iii)each current director, manager, officer, employee, trustee, advisory board member, attorney, accountant, representative, and other professional and advisor who was employ during the Bankruptcy Case with respect to clauses (i) through (iii).

26. **"Effective Date"** means the date that is the first Business Day: (i) following the date that is fourteen (14) days after the Confirmation Date; or (ii) if a stay of the Confirmation Order is in effect, the first Business Day after the date on which the stay of the Confirmation Order expires or is otherwise terminated. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

27. **"Entity"** means any entity, as defined in section 101(15) of the Bankruptcy Code.

28. **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to sections 541 and 1186 of the Bankruptcy Code.

29. **"Executory Contract"** means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

30. **"Final Decree"** means the decree contemplated pursuant to Bankruptcy Rule 3022.

31. **"Final Order"** means an order of judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal, seek certiorari, or move for a new trial, stay, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending; or (b) if any appeal, certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule, may be filed relating to such order or judgment, shall not cause such order or judgment not to be a Final Order.

32. **"General Unsecured Claim"** means any Claim that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, or (e) a Claim under Classes 1, 2, 3, and 5.

33. **"Government Bar Date"** means May 27, 2025, the deadline for a Governmental Unit to file a Proof of Claim against the Estate in the Bankruptcy Case.

34. **"Governmental Unit"** means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

35. **"Impaired"** means, with respect to any Class of Claims or Interests, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

36. **"Interests"** means any equity or membership interest in the Debtor, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, any other right to purchase or otherwise receive any ownership interest in the Debtor, or other interest or related right to payment or compensation based upon such interest, existing on or before the Effective Date.

37. **"Lien"** means a lien as defined in section 101(37) of the Bankruptcy Code.

38. **"Liquidation Analysis"** shall have the meaning set forth in Article I.D. The Debtor's Liquidation Analysis is attached to the Plan as **Exhibit A**.

39. **"Other Priority Claim"** means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

40. **"Other Secured Claim"** means any secured Claim, other than a claim of Choice Financial Group, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

41. **"Person"** has the meaning set forth in section 101(14) of the Bankruptcy Code.

42. **"Petition Date"** means the date on which the Debtor commenced the Bankruptcy Case.

43. **"Plan"** means this plan of reorganization, including all exhibits, supplements, appendices, and schedules, in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

44. **"Plan Term"** means the duration of time from the Effective Date through the [third] anniversary of the Effective Date.

45. **"Priority Tax Claims"** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, including a Secured Claim of a Governmental Unit which would otherwise meet the description of an unsecured Claim under section 507(a)(8), but for the secured status of the Claim.

46. **"Pro Rata"** means, unless otherwise specified, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

47. **"Proof of Claim"** means a proof of Claim filed against the Debtor in the Bankruptcy Case.

48. **"Professional"** means: (a) an Entity employed pursuant to sections 327, 363, or 1103 of the Bankruptcy Code; (b) the Subchapter V Trustee; and (c) an Entity awarded

compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

49. **"Professional Fee Claim"** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, and 503(b) of the Bankruptcy Code.

50. **"Projected Disposable Income"** shall have the meaning set forth in Article I.E~~Article I.F~~.

51. **"Reinstate"** means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

52. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be supplemented or amended from time to time.

53. **"Secured Claim"** means any Claim that is secured by a valid, perfected and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

54. **"Solicitation"** means that solicitation of votes in connection with the Plan pursuant to section 1126 of the Bankruptcy Code.

55. **"Solicitation Procedures Order"** means the order entered by the Bankruptcy Code setting the date for the Confirmation Hearing, and establishing deadlines for submitting Ballots, objecting to the Plan and the proposed assumption of Executory Contracts and Unexpired Leases, among other relief.

56. **"Subchapter V Trustee"** shall refer to Steven Nosek, appointed pursuant to section 1183(a) of the Bankruptcy Code in the Bankruptcy Case.

57. **"Unclaimed Distribution"** shall have the meaning provided in Article VII.E.

58. **"Unexpired Lease"** means a lease to which the Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

59. **"Unimpaired"** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

60. **"Voting Deadline"** means the deadline for submitting Ballots established in the Solicitation Procedures Order.

*B. Rules of Interpretation.*

For the purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) any immaterial effectuating provisions may be interpreted by the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (10) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## ARTICLE X.
## OTHER PROVISIONS

*A. Confirmation Hearing and Objection Deadline.*

The Bankruptcy Court will schedule the Confirmation Hearing to consider whether the Plan satisfies the various requirements of the Bankruptcy Code and Bankruptcy Rules. Any objection to the Plan shall be filed by the objection deadline set forth in the Solicitation Procedures Order.

*B. Acceptance and Rejection of Plan.*

The Debtor shall provide all Holders of Allowed Claims in an Impaired Class with a Ballot. Such Holders may vote to accept or reject the Plan by completing, dating, signing and causing to the Ballot to be returned to the Debtor's counsel by the voting deadline set forth in the Solicitation Procedures Order.

Pursuant to section 1126 of the Bankruptcy Code, an Impaired Class shall have accepted the Plan if (i) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan, and (ii) the Holders of more than one-half (1/2) in number of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan (in both instances, acceptance or rejection by such Holders shall be made in good faith). If necessary and applicable for Confirmation of the Plan, the Debtor reserves the right to request that the Bankruptcy Court address whether the Plan may be deemed accepted or rejected by any Impaired Class for which no Holder has returned a Ballot voting to accept or reject the Plan.

*C. Nonconsensual Confirmation.*

The Bankruptcy Court shall confirm the Plan under section 1191(a) of the Bankruptcy Code if all of the requirements of section 1129(a) of the Bankruptcy Code are met, including, among other things making a finding that all Impaired Classes have voted to accept the Plan.

If one or more Impaired Class votes to reject the Plan, the Bankruptcy Court shall confirm the Plan upon a finding that the Debtor has satisfied the requirements of section 1191(b) with respect to each rejecting Impaired Class.

*D. Immediate Binding Effect.*

Upon the occurrence of the Effective Date, the terms of the Plan, and any documents supplemental to the Plan, shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

*E. Retention of Jurisdiction.*

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising out of, and related to, the Plan, the Confirmation Order, and the Bankruptcy Case to the fullest extent permitted by law, including but not limited to: (i) determining the allowance of compensation and expenses of Professionals; (ii) hearing and deciding any and all adversary proceedings, applications, and contested matters; (iii) determining issues or disputes relating to the assumption of Executory Contracts and Unexpired Leases and any claims related thereto; (iv) determining disputes as to classification or allowance of Claims or Interests; (v) resolving any dispute between or among any of the parties to the Bankruptcy Case; (vi) ruling on any modification of the Plan proposed under section 1193; (vii) determining other such matters as may be set forth in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; (viii) entering a final decree closing the Bankruptcy Case; (ix) correcting any defect, cure any omission or reconciling any inconsistency in this Plan or Confirmation Order; and (x) issuing such orders or injunctions as may be necessary

to execute, implement, or consummate the Plan, or taking such other actions as may be necessary to restrain interference by any Entity with consummation or enforcement of the Plan.

*F. Entire Agreement and Non-severability.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtor or, prior to the termination of his services, the Subchapter V Trustee's consent; and (ii) non-severable and mutually dependent.

*G. Effect of Non-occurrence of Effective Date.*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgment, offer or undertaking by the Debtor.

*H. Governing Law.*

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to conflict-of-laws principles.

*I. Tax Consequences.*

The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto. There can be no assurance that the Internal Revenue Service or any state or local taxing authorities will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

FOR THE FOREGOING REASONS, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN,

FEDERAL, STATE, AND LOCAL) TO THEM OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR EQUITY HOLDER, NOR IS THE DEBTOR RENDERING ANY FORM OR LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.

*J. Reservation of Rights.*

The Debtor reserves the right to, among other things: (i) contest the right of the Holder of any Claim to vote on the Plan, or designate the vote of the Holder of any Claim; (ii) contest the right of the Holder of any Claim to receive distributions under the Plan; (iii) contest the validity of a creditor's Lien or security interest; (iv) seek to subordinate any Claim for inequitable conduct or otherwise; and (v) to pre-pay all or a portion of an Allowed Claim. Except as otherwise provided, no assets shall be deemed abandoned and no defense, set-off, counterclaim, or right of recoupment of the Debtor shall be deemed waived, released, or compromised.

*K. Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor, or any other Entity, if such agreement was not disclosed in the Plan or any documents supplementary to the Plan prior to the Confirmation Date.

*L. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, success or assign, affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

UMAPM Holding Company, LLC

Dated:

By: */s/ John Siami*________________________
Name: John Siami
Title: Manager

**EXHIBIT A**

**LIQUIDATION ANALYSIS**

**EXHIBIT B**

**FINANCIAL PROJECTIONS**

**EXHIBIT C**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED**

| Contract | Counter-Party | Cure Amount | Date of Payment |
|---|---|---|---|
| Real Property Lease | UMA Properties, LLC | $73,234.54 | Thirty (30) days after the Effective Date |
| Matsuura MX-330 Lease | Williams Equipment Fund LLC | $22,500.00 | Twelve (12) equal monthly installments starting on the last day of the month after the Effective Date |
| Photocopier Lease | U.S. Bank Marshall Equipment Finance | $958.47 | Thirty (30) days after the Effective Date |

# EXHIBIT D

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

None